**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

Adrian Energy Associates, LLC, Cadillac Renewable Energy LLC, Genesee Power Station, LP, Grayling Generating Station, LP, Hillman Power Company, LLC, T.E.S. Filer City Station, LP, Viking Energy of Lincoln, Inc. and Viking Energy of McBain, Inc.,

  Plaintiffs,

v

Michigan Public Service Commission, Commissioner J. Peter Lark, Commissioner Robert B. Nelson, Commissioner Laura Chapelle,

  Defendants,

and

Consumers Energy Company,

  Intervenor/Defendant.

Case No.: 5:05-cv-00060

Hon. Richard Alan Enslen
Magistrate Ellen S. Carmody

| | |
|---|---|
| Thomas J. Waters (P37829) | Michael A. Nickerson (25138) |
| Thaddeus E. Morgan (P47394) | Steven D. Hughey P32203) |
| Fraser Trebilcock Davis & Dunlap, P.C. | Patricia S. Barone (P29560) |
| 124 W. Allegan, Suite 1000 | Assistant Attorneys General |
| Lansing, Michigan 48933 | Public Service Division |
| Telephone: (517) 482-5800 | 6545 Mercantile Way, Suite 15 |
| Fax: (517) 482-0887 | Lansing, Michigan 48911 |
| Attorneys for Plaintiffs | Telephone: (517) 241-6680 |
| | |
| | Michael G. Wilson (P33263) |
| | Consumers Energy Company |
| | One Energy Plaza |
| | Jackson, Michigan 49201 |
| | Telephone: (517) 788-1255 |
| | Fax: (517) 768-3141 |

**FIRST AMENDED COMPLAINT**

NOW COME Plaintiffs, by and through their attorneys, **FRASER TREBILCOCK DAVIS & DUNLAP, P.C.**, and file their First Amended Complaint against Defendants pursuant to Fed. R. Civ. P. 15(a) stating as follows:

## JURISDICTION AND VENUE

1. Plaintiffs are corporations, limited liability companies and limited partnerships that are organized or existing under the laws of the States of Michigan, Delaware and California, as explained more fully hereinafter.

2. This is an action for declaratory judgment pursuant to 28 USC § 2201, et seq., for the purpose of determining a question of actual controversy between the parties.

3. This Court has jurisdiction over this cause of action pursuant to 28 USC § 1331 because this cause of action arises under the laws of the United States, namely the Federal Power Act ("FPA"), 16 U.S.C. §§ 791a, *et seq.* and the Public Utility Regulatory Policies Act of 1978 ("PURPA"), 16 USC § 824a-3 *et seq.*, including, but not limited to, 16 USC § 824a-3(e) and 16 USC § 824a-3(h)(2).

4. This Court also has jurisdiction over this cause of action pursuant to 28 USC § 1331 because this action involves a claim under the United States Constitution.

5. Venue is proper in this judicial district under 28 USC § 1391(b) as a substantial part of the events giving rise to this claim occurred in the Western District of Michigan and Defendant Michigan Public Service Commission ("MPSC") is located in the Western District of Michigan.

FRASER
TREBILCOCK
DAVIS &
DUNLAP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

## PARTIES

6. Defendant Michigan Public Service Commission is a duly authorized agency of the State of Michigan.

7. Defendants J. Peter Lark, Chairman, Commission Robert B. Nelson, and Commissioner Laura Chapelle are the duly appointed Commissioners of the Michigan Public Service Commission.

**Plaintiff Adrian Energy Associates, LLC**

8. Plaintiff Adrian Energy Associates, LLC is a Michigan limited liability company, which has its principal place of business in Adrian, Michigan.

9. Plaintiff Adrian Energy Associates, LLC owns and operates a 2.4 Megawatt ("MW") landfill gas-fired electric generating station that is a "qualifying facility" under the Public Utility Regulatory Policies Act of 1978, 16 USC 824a-3, *et seq*. and the rules of the Federal Energy Regulatory Commission.

10. Plaintiff Adrian Energy Associates, LLC has entered into a Power Purchase Agreement with Consumers Energy Company ("Consumers"), pursuant to which Consumers buys electric capacity and energy from Plaintiff Adrian Energy Associates.

11. Plaintiff Adrian Energy Associates, LLC's Power Purchase Agreement with Consumers Energy Company is for a term of 35 years which commenced with the commercial operation date of Plaintiff Adrian Energy Associates, LLC's project in 1994.

**Plaintiff Cadillac Renewable Energy, LLC**

12. Plaintiff Cadillac Renewable Energy, LLC is a Delaware limited liability company, which has its principal place of business in Cadillac, Michigan.

FRASER
TREBILCOCK
DAVIS &
DUNLAP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

13. Plaintiff Cadillac Renewable Energy, LLC owns and operates a 34 Megawatt ("MW") wood-fired electric generating station that is a "qualifying facility" under the Public Utility Regulatory Policies Act of 1978, 16 USC 824a-3, *et seq*. and the rules of the Federal Energy Regulatory Commission.

14. Plaintiff Cadillac Renewable Energy, LLC has entered into a Power Purchase Agreement with Consumers Energy Company, pursuant to which Consumers buys electric capacity and energy from Plaintiff Cadillac Renewable Energy.

15. Plaintiff Cadillac Renewable Energy, LLC's Power Purchase Agreement with Defendant Consumers Energy Company is for a term of 35 years which commenced with the commercial operation date of Plaintiff Cadillac Renewable Energy, LLC's project on July 16, 1993.

**Plaintiff Genesee Power Station, LP**

16. Plaintiff Genesee Power Station, LP is a Delaware limited partnership doing business in Genesee Township, Michigan.

17. Plaintiff Genesee Power Station, LP owns and operates the Genesee Power Station which is wood-fired electric generating station that is a "qualifying facility" under the Public Utility Regulatory Policies Act of 1978, 16 USC 824a-3, *et seq*. and the rules of the Federal Energy Regulatory Commission.

18. Plaintiff Genesee Power Station, LP has a signed Power Purchase Agreement with Consumers Energy Company, pursuant to which Consumers buys electric capacity and energy from Plaintiff Genesee Power Station, LP.

FRASER
TREBILCOCK
DAVIS &
DUNLAP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

4

19. Plaintiff Genesee Power Station, LP's Power Purchase Agreement is for a term of 35 years which commenced with the commercial operation date of Plaintiff Genesee Power Station, LP's project in approximately December 1995.

**Plaintiff Grayling Generating Station, LP**

20. Plaintiff Grayling Generating Station, LP is a Michigan limited partnership with its principal place of business in Grayling Township, Michigan.

21. Plaintiff Grayling Generating Station, LP owns and operates the Grayling Station which is a wood-fired electric generating station that is a "qualifying facility" under the Public Utility Regulatory Policies Act of 1978, 16 USC 824a-3, *et seq*. and the rules of the Federal Energy Regulatory Commission.

22. Plaintiff Grayling Generating Station, LP has a signed Power Purchase Agreement with Consumers Energy Company, pursuant to which Consumers buys electric capacity and energy from Plaintiff Grayling Generating Station, LP.

23. Plaintiff Grayling Generating Station, LP's Power Purchase Agreement is for a term of 35 years which commenced with the commercial operation date of Plaintiff Grayling Generating Station, LP's project in June 1992.

**Plaintiff Hillman Power Company, LLC**

24. Plaintiff Hillman Power Company, LLC is a Delaware limited liability company with its principal place of business in Hillman, Michigan.

25. Plaintiff Hillman Power Company, LLC owns and operates the Hillman Generating Station which is a wood-fired electric generating station that is a "qualifying facility" under the Public Utility Regulatory Policies Act of 1978, 16 USC 824a-3, *et seq*. and the rules of the Federal Energy Regulatory Commission.

FRASER
TREBILCOCK
DAVIS &
DUNLAP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

26. Plaintiff Hillman Power Company, LLC has a signed Power Purchase Agreement with Consumers Energy Company, pursuant to which Consumers buys electric capacity and energy from Plaintiff Hillman Power Company, LLC.

27. The term of Plaintiff Hillman Power Company, LLC's Power Purchase Agreement with Consumers Energy Company extends until at least December 31, 2015.

**Plaintiff T.E.S. Filer City Station, LP**

28. Plaintiff T.E.S. Filer City Station, LP is a Michigan limited partnership with its principal place of business in Filer City, Michigan.

29. Plaintiff T.E.S. Filer City Station, LP owns and operates the Filer City Station Plant, a coal, waste wood and chip-tire fired electric generating plant that is a "qualifying facility" under the Public Utility Regulatory Policies Act of 1978, 16 USC 824a-3, *et seq*. and the rules of the Federal Energy Regulatory Commission.

30. Plaintiff T.E.S. Filer City Station, LP has entered into a Power Purchase Agreement with Consumers Energy Company, pursuant to which Consumers buys electric capacity and energy from Plaintiff T.E.S. Filer City Station, LP.

31. Plaintiff T.E.S. Filer City Station, LP's Power Purchase Agreement is for a term of 35 years which commenced with the commercial operation date of Plaintiff T.E.S. Filer City Station, LP's project in approximately June 1990.

**Plaintiff Viking Energy of Lincoln, Inc.**

32. Plaintiff Viking Energy of Lincoln, Inc. is a California corporation, with its principal place of business in Lincoln, Michigan.

33. Plaintiff Viking Energy of Lincoln, Inc. owns and operates a 18 MW wood-fired electric generating station that is a "qualifying facility" under the Public Utility Regulatory

FRASER
TREBILCOCK
DAVIS &
DUNLAP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

6

Policies Act of 1978, 16 USC 824a-3, *et seq*. and the rules of the Federal Energy Regulatory Commission.

34.     Plaintiff Viking Energy of Lincoln, Inc. has signed a Power Purchase Agreement with Consumers Energy Company, pursuant to which Consumers buys electric capacity and energy from Plaintiff Viking Energy of Lincoln, Inc.

35.     The term of Plaintiff Viking Energy of Lincoln, Inc.'s Power Purchase Agreement with Consumers Energy Company extends until at least December 31, 2018.

**Plaintiff Viking Energy of McBain, Inc.**

36.     Plaintiff Viking Energy of McBain, Inc. is a California corporation, which has its principal place of business in McBain, Michigan.

37.     Plaintiff Viking Energy of McBain, Inc. owns and operates an 18 MW wood-fired electric generating station that is a "qualifying facility" under the Public Utility Regulatory Policies Act of 1978, 16 USC 824a-3, *et seq*. and the rules of the Federal Energy Regulatory Commission.

38.     Plaintiff Viking Energy of McBain, Inc. has a signed Power Purchase Agreement with Consumers Energy Company, pursuant to which Consumers Energy buys electric capacity and energy from Plaintiff Viking Energy of McBain, Inc.

39.     The term of Plaintiff Viking Energy of McBain, Inc.'s Power Purchase Agreement with Consumers Energy Company extends until at least December 31, 2018.

## GENERAL ALLEGATIONS

40.     Plaintiffs hereby adopt and incorporate by reference the foregoing allegations as if fully repeated verbatim herein.

FRASER
TREBILCOCK
DAVIS &
DUNLAP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

41. The Power Purchase Agreements ("PPAs") between the Plaintiffs and Consumers Energy Company were entered into pursuant to the Public Utility Regulatory Policies Act, 16 USC 824a-3, *et seq*., ("PURPA"), and the rules of the Federal Energy Regulatory Commission.

42. The PPAs explicitly provide that "the capacity and energy payment rates to be paid by Consumers are based on the concept of 'avoided costs' as now described in Section 210 of [PURPA] . . . ."

43. PURPA's regulations define "avoided costs" as "the incremental costs to an electric utility of electric energy or capacity or both which, but for the purchase from the qualifying facility or qualifying facilities, such utility would generate itself or purchase from another source."  18 CFR 292.101(b)(6).

44. Avoided cost payments include both "avoided capacity" payments (i.e., payments for fixed capital costs) and "avoided energy" (i.e., payments for fuel, operation and maintenance, etc.) payments.

45. PURPA's regulations authorize qualifying facilities to choose to provide electric energy to utilities pursuant to legally enforceable obligations for the delivery of electricity over a specified term. 18 C.F.R. 292.304 (d).

46. All of the Plaintiffs chose to provide electric energy to Consumers Energy Company pursuant to legally enforceable obligations for the delivery of electricity over a specified term.

47. If a "qualifying facility" chooses to sell electricity for a specified term, the "qualifying facility" may either (i) choose to be paid the utility's avoided costs calculated at the time the electricity is delivered to the utility or (ii) it may choose to have the "avoided cost"

FRASER
TREBILCOCK
DAVIS &
DUNLAP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

8

payments calculated (for the full term of its contract) at the time it incurs the obligation to the utility (i.e., at the time it signs its power purchase agreement). 18 C.F.R. § 292.304(d).

48. The Michigan QFs all elected to have their avoided costs calculated "up front" for the entire term of their contracts, based upon Consumers Energy Company's avoided costs determined at the time the Michigan QFs incurred their contractual obligation to sell electricity to Consumers Energy Company, pursuant to 18 CFR 292.304(d)(2)(ii).

49. None of the Michigan QFs elected to be paid the utility's avoided costs determined at the time of the delivery of the electricity to the utility pursuant to 18 CFR 292.304(d)(2)(i).

50. The intent of the PPAs is for Consumers Energy Company to pay the Michigan QFs its avoided costs and the Michigan QFs never agreed to be paid less than avoided costs.

51. The costs that Consumers Energy Company avoided by entering into contracts to purchase electricity from the Michigan QFs were the costs of a bituminous coal-fired generating plant.

    i. In sworn testimony filed with the MPSC, Consumers Energy Company admitted that the costs it would avoid by purchasing electricity from the Michigan QFs were the costs of a bituminous coal-fired generating plant.

    ii. In contract negotiations and in its course of performance under the PPAs, Consumers Energy Company also admitted that the costs it avoided by purchasing electricity from the Michigan QFs were the costs of a bituminous coal-fired generating plant.

52. In a series of orders issued in 1984, 1987 and 1989 through 1993 ("1980's Orders"), the MPSC determined that the costs Consumers Energy Company would avoid by purchasing electricity from the QFs were the costs of a bituminous coal-fired generating plant.

FRASER
TREBILCOCK
DAVIS &
DUNLAP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

53. In establishing Consumers Energy Company's avoided costs in its 1980's Orders, the MPSC made no allowance for modifying the proxy plant to burn any coal other than bituminous coal.

54. In establishing Consumers Energy Company's avoided costs in its 1980's Orders, the MPSC rejected the use of a sub-bituminous coal-fired generating plant as the proxy plant for determining Consumers Energy Company's avoided costs.

55. In order to conform their Power Purchase Agreements to the Orders of the MPSC, Consumers Energy Company and the Michigan QFs agreed that the energy payments that Consumers pays the Michigan QFs would be calculated based upon Consumers' coal costs at its Base Plants because those plants burned the same bituminous coal that the avoided plant would have burned.

56. In the early years of their contracts, Consumers Energy Company paid the Plaintiffs an energy payment that was calculated on the basis of bituminous coal.

57. Long after the Michigan QFs signed their Power Purchase Agreements, Consumers Energy Company spent several hundred million dollars rebuilding its Base Plants to burn sub-bituminous coal.

58. After Consumers Energy Company rebuilt its Base Plants to burn sub-bituminous coal, it unilaterally began calculating the Michigan QFs' energy rates on the basis of the cost of that sub-bituminous coal.

59. Consumers Energy Company is presently paying the Michigan QFs a capacity charge that is based on the costs of a bituminous coal-fired plant, but paying an energy charge that is based on the costs of a sub-bituminous coal which the proxy plant would not have burned.

FRASER
TREBILCOCK
DAVIS &
DUNLAP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

60.     The Michigan QFs are not being paid avoided costs as required by their Power Purchase Agreements, PURPA and the FERC regulations.

61.     As a result of the Consumers Energy Company's recalculation of Plaintiffs' energy payments on the basis of a fuel mix that consists predominantly of the lower cost bituminous coal, Plaintiffs have suffered damages of more than $20,000,000.00.

62.     The Plaintiffs will continue to suffer damages in the future.

63.     A second dispute between the Michigan QFs and Consumers Energy Company involves $12,292,142 that Consumers has collected from its ratepayers for "reimbursement" of the Michigan QFs' avoided cost energy charges but has refused to turn over to the Michigan QFs.

64.     Consumers Energy Company is allowed to recover from its customers the capacity and energy payments that it pays to the Plaintiffs through the Power Supply Cost Recovery provisions of MCL 460.6j, et seq.  A Power Supply Cost Recovery clause ("PSCR clause") means "a clause in the electric rates or rate schedule of a utility which permits the monthly adjustment of rates for power supply to allow the utility to recover the booked costs . . . of fuel burned by the utility for electric generation and booked costs of purchased and net interchanged power transactions by the utility incurred under reasonable and prudent policies and practices." MCL 460.6j(1)(a).

65.     On February 11, 1998, the MPSC issued an order granting Consumers' request to suspend its PSCR clause and freeze its rates.[1]

66.     After the MPSC granted Consumers' request to freeze its reimbursement rates (which frozen rates included energy costs for the Michigan QFs that were calculated on the basis of a fuel mix that included the more expensive bituminous coal), Consumers unilaterally began

FRASER
TREBILCOCK
DAVIS &
DUNLAP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

11

paying Michigan QFs energy rates that were calculated on the basis of a fuel mix that included increasingly greater quantities of the less expensive sub-bituminous coal.

67. From 1998 through 2003, Consumers recovered energy costs from its retail customers at the frozen 1997 PSCR rate calculated predominantly on the basis of the higher cost bituminous coal, but paid the Michigan QFs an energy rate calculated predominantly on the basis of the lower cost sub-bituminous coal.

68. This resulted in Consumers collecting $12,292,142 more from its customers for electricity purchased from the Michigan QFs than it paid to the Michigan QFs.

69. Because the Michigan QFs are no longer being paid avoided costs as required by their Power Purchase Agreements, PURPA and the FERC regulations, and because Consumers Energy Company has retained $12,292,142 in avoided cost payments that it has collected from its customers for electricity purchased from the Plaintiffs, the Michigan QFs filed a suit against Consumers Energy Company on October 14, 2003 in Michigan state court, Ingham County Circuit Court Case No. 03-1799-CZ.

70. On February 12, 2004, the Ingham County Circuit Court issued a written "Order granting deferral to the primary jurisdiction of the MPSC" and transferred the proceedings to the MPSC for a hearing and decision.[2]

71. The Michigan QFs objected to the jurisdiction of the MPSC to hear the between Consumers Energy Company and the Michigan QFs.

72. The MPSC heard the dispute between Consumers Energy Company and the Michigan QFs and issued its decision on February 28, 2005.

73. In its decision, the MPSC held that:

---

[1] MPSC Case No. U-11453, February 11, 1998 Order, p. 11.

FRASER
TREBILCOCK
DAVIS &
DUNLAP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

      i.      The MPSc had jurisdiction to hear the dispute between Consumers Energy Company and the Michigan QFs.

      ii.      "[T]he QFs' contentions regarding the significance of PURPA and the FERC's regulations governing utility purchases from qualifying facilities, are not material to the outcome of this proceeding;[3] and

      iii.      "Consumers' avoided costs . . . are irrelevant in resolving this dispute."[4]

      iv.      Michigan Act 304, MCL 460.6j(6), justifies Consumers Energy Company's failure to pay the Michigan QFs an energy rate calculated on the basis of cost of fuel that Consumers avoided by purchasing electricity from the Michigan QFs. In this regard, the MPSC concluded that: "Consumers is legally obligated by Act 304 to take all appropriate steps to minimize coal costs charged to its PSCR customers. Consumers' failure to pursue appropriate measures to reduce its PSCR expenses could be deemed unreasonable or imprudent conduct that could lead to the disallowance of costs under Act 304."[5]

74. Because it found that PURPA and the FERC regulations were irrelevant, and because it found that state law justified Consumers' failure to pay the Michigan QFs an energy rate calculated on the basis of cost of fuel that Consumers avoided by purchasing electricity from the Michigan QFs, the MPSC refused to consider numerous federal issues raised by the Michigan QFs, including the following issues: (i) whether federal law requires that avoided capacity and energy payments be based upon the same avoided plant, (ii) whether a utility complies with its PURPA obligation to pay a qualifying facility avoided costs when it pays the qualifying facility avoided capacity payments calculated on the basis of the cost of a bituminous coal fired generating plant but pays avoided energy payments calculated on the basis of the cost of a type of fuel that the avoided plant would not have burned, (iii) whether Consumers' actions nullified the Michigan QFs' election to have their avoided costs calculated "up front" for the

---

[2] The Michigan QFs believe that the referral of the dispute to the MPSC was erroneous and have appealed to the Michigan Court of Appeals.
[3] February 28, 2005 MPSC Order p. 18.
[4] Proposal for Decision, p 53.
[5] February 28, 2005 MPSC Order, p 19.

13

FRASER
TREBILCOCK
DAVIS &
DUNLAP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

entire term of the contract pursuant to 18 CFR 292.304(d)(2)(ii), (iv) whether Consumers subjected the Michigan QFs to utility-type regulation in violation of 16 U.S.C. § 824a-3(e)(1) and 18 CFR § 292.602, and (v) whether Consumers' actions had the unlawful effect of discriminating against the Michigan QFs in violation of 16 USC § 824a-3(b)(2) and 18 CFR §292.304(a)(1)(ii).

75. Plaintiffs filed a separate Complaint and Petition with the Federal Energy Regulatory Commission on March 30, 2005 claiming that the MPSC's February 28, 2005 Opinion and Order constituted a failure to implement and enforce the FERC's regulations in violation of federal law.

76. The MPSC, individual Commissioners and Consumers Energy Company all filed Answers to the Plaintiff's FERC Complaint and Petition on April 20, 2005.

77. On June 1, 2005, the Federal Energy Regulatory Commission issued a Notice of Intent Not to Act, which authorized the Plaintiffs to proceed directly against the MPSC in federal court pursuant to 16 USC §824a-3(h)(2) of PURPA. This order was issued by the FERC in Docket No. EL05-85-000. A copy of that Order is attached to this Amended Complaint.

## COUNT I
## DECLARATORY JUDGMENT
## THE MPSC's ORDER VIOLATES
## THE PUBLIC UTILITY REGULATORY POLICIES ACT

78. Plaintiffs hereby adopt and incorporate by reference the foregoing allegations as if fully repeated verbatim herein.

79. The MPSC's February 28, 2005 Opinion and Order subjects the Plaintiffs to regulation respecting their rates in violation of the Public Utility Regulatory Policies Act of 1978, 16 USC 824a-3, *et seq*. including (but not limited to) § 210(a), § 210(b), § 210(d), § 210(e)

FRASER
TREBILCOCK
DAVIS &
DUNLAP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

and § 210(f) of the Act, and the rules of the Federal Energy Regulatory Commission, and the rules promulgated by the Federal Energy Regulatory Commission pursuant to the Act.

80. The MPSC's conclusion that PURPA and the FERC regulations are not material to the Michigan QFs' claims contradicts the Public Utility Regulatory Policies Act of 1978, 16 USC 824a-3, *et seq*. and the rules of the Federal Energy Regulatory Commission and is invalid by virtue of the supremacy clause of the Constitution of the United States.

81. The MPSC's February 28, 2005 Opinion and Order constitutes a revision of the Plaintiffs' Power Purchase Agreements and the MPSC's prior avoided cost determinations relating to the Michigan QFs in violation of the Public Utility Regulatory Policies Act of 1978, 16 USC 824a-3, *et seq*.

82. The MPSC has failed to implement and enforce the regulations of the Federal Energy Regulatory Commission issued pursuant to PURPA in violation of federal law.

83. Plaintiffs have a direct and vital interest in having this issue resolved.

84. A declaratory action would settle any controversy between the Plaintiffs and Defendants as to whether the Commission's orders violated the Federal Power Act.

85. A declaratory action would clarify the legal relationship between the Commission's orders and the Federal Power Act, supra.

WHEREFORE, Plaintiffs respectfully pray that this Court enter a Declaratory Judgment in this cause of action as follows:

    A. The Commission's orders in MPSC Case Nos. U-13917 are in conflict with the Public Utility Regulatory Policies Act of 1978, 16 USC 824a-3, *et seq*. and are therefore preempted by federal law and that the Defendants are enjoined from enforcing those orders; and

    B. Issue an injunctive order requiring the MPSC to implement and enforce the regulations of the FERC issued pursuant to PURPA, requiring the MPSC to order Consumers to pay Plaintiffs an energy rate that is

FRASER
TREBILCOCK
DAVIS &
DUNLAP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

    calculated on the basis of the bituminous coal-fired electric generating plant that Consumers was able to avoid by entering into the Power Purchase Agreements with the Plaintiffs, and further requiring the MPSC to order Consumers Energy Company to pay to the Plaintiffs the $12,292,142 that Consumers has collected from its retail customers for reimbursements for amounts to be paid to the Plaintiffs for the period from 1998-2003 but wrongfully refused to pay to the Plaintiffs.

 C. Grant such other and further relief as this Court deems just and equitable.

## COUNT II
## DECLARATORY JUDGMENT
## THE MPSC's ORDER VIOLATES THE FEDERAL POWER ACT

 86. Plaintiffs hereby adopt and incorporate by reference the foregoing allegations as if fully repeated verbatim herein.

 87. Wholesale electric energy transactions are governed by the Federal Power Act. 16 U.S.C. §824(b) *et seq*. <u>New England Power Co v New Hampshire</u>, 455 US 331, 340 (1982).

 88. Pursuant to its authority under the FPA, FERC has jurisdiction over interstate wholesale power rates. 16 U.S.C. §824(b)(1) *et seq*. <u>Natahala Power and Light Co v Thornburg</u>, 476 U.S. 953, 956, 106 S.Ct. 2349, 90 L.Ed.2d 943 (1986).

 89. FERC's authority to determine whether wholesale rates are "just and reasonable" is exclusive. <u>Mississippi Power & Light Co v Mississippi</u>, 487 U.S. 354, 371, 108 S.Ct. 2428, 101 L.Ed. 322 (1988).

 90. The MPSC's conclusion that state law, MCL 460.6j(6), empowers Consumers Energy Company to not pay the Michigan QFs avoided costs contradicts the Federal Power Act, 16 U.S.C. §791a *et seq*., including 16 U.S.C. §§824-824m, and is invalid by virtue of the supremacy clause of the Constitution of the United States.

 91. The MPSC's conclusion that PURPA and the FERC regulations are not material to the Michigan QFs' claims contradicts the Federal Power Act, 16 U.S.C. §791a *et seq*.,

including 16 USC §824(b), and is invalid by virtue of the supremacy clause of the Constitution of the United States.

92. Plaintiffs have a direct and vital interest in having this issue resolved.

93. A declaratory action would settle any controversy between the Plaintiffs and Defendants as to whether the Commission's orders violated the Federal Power Act.

94. A declaratory action would clarify the legal relationship between the Commission's orders and the Federal Power Act, *supra*.

WHEREFORE, Plaintiffs respectfully pray that this Court enter a Declaratory Judgment in this cause of action as follows:

> A. The Commission's orders in MPSC Case Nos. U-13917 are in conflict with the Federal Power Act and are therefore preempted by federal law and that the Defendants are enjoined from enforcing those orders; and
>
> B. Grant such other and further relief as this Court deems just and equitable.

### COUNT III
### DECLARATORY JUDGMENT
### THE ISSUANCE OF THE MPSC's ORDER IS VOID BY OPERATION OF THE SUPREMACY CLAUSE OF THE CONSTITUTION OF THE UNITED STATES

95. Plaintiffs hereby adopt and incorporate by reference the foregoing allegations as if fully repeated verbatim herein.

96. The MPSC's February 28, 2005 Opinion and Order conflicts with both the Federal Power Act, 16 U.S.C. §791a *et seq*., the Public Utility Regulatory Policies Act of 1978, 16 USC 824a-3, *et seq*., and the rules of the Federal Energy Regulatory Commission.

97. By virtue of the Supremacy Clause of the Constitution of the United States, Art. VI, cl. 2, the Federal Power Act, 16 U.S.C. §791a *et seq*., the Public Utility Regulatory Policies Act of 1978, 16 USC 824a-3, *et seq*., and the rules of the Federal Energy Regulatory Commission supercede, invalidate and preempt the MPSC's February 28, 2005 Order.

FRASER
TREBILCOCK
DAVIS &
DUNLAP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

17

98. Plaintiffs have a direct and vital interest in having this issue resolved.

99. A declaratory action would settle any controversy between the Plaintiffs and Defendants as to whether the Commission's orders violated the Federal Power Act.

100. A declaratory action would clarify the legal relationship between the Commission's orders and the Federal Power Act, supra.

WHEREFORE, Plaintiffs respectfully pray that this Court enter a Declaratory Judgment in this cause of action as follows:

    A.    The Commission's orders in MPSC Case Nos. U-13917 are in conflict with the Federal Power Act, 16 U.S.C. §791a *et seq*., the Public Utility Regulatory Policies Act of 1978, 16 USC 824a-3, *et seq*., and the rules of the Federal Energy Regulatory Commission and, therefore, are preempted by federal law by virtue of the Supremacy Clause of the Constitution of the United States and that the Defendants are enjoined from enforcing those orders; and

    B.    Grant such other and further relief as this Court deems just and equitable.

*Respectfully submitted*,
FRASER TREBILCOCK DAVIS & DUNLAP, P.C.

Date:   June 2, 2005

By:   s/ Thomas J. Waters
    Thomas J. Waters (P37829)
    Fraser Trebilcock Davis & Dunlap, P.C.
    124 W. Allegan, Suite 1000
    Lansing, Michigan 48933
    Telephone:  (517) 482-5800
    Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that Plaintiffs' First Amended Complaint was filed electronically on June 3, 2005. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

                              s/    Thomas J. Waters
                              Thomas J. Waters (P37829)
                              Thaddeus E. Morgan (P47394)

FRASER TREBILCOCK DAVIS & DUNLAP, P.C.
LAWYERS
LANSING, MICHIGAN 48933