## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

---

Adrian Energy Associates, LLC, Cadillac
Renewable Energy, LLC, Genesee Power Station,
LP, Grayling Generating Station, LP, Hillman
Power Company, LLC, T.E.S. Filer City Station,       Case No.:  5:05-cv-00060
LP, Viking Energy of Lincoln, Inc., and Viking
Energy of McBain, Inc.,                              Hon. Richard Alan Enslen
                                                     Magistrate Ellen S. Carmody
        Plaintiffs,

v

Michigan Public Service Commission,
Commissioner J. Peter Lark, Commissioner Robert
B. Nelson, Commissioner Laura Chapelle,

        Defendants,

and

Consumers Energy Company,

        Intervenor/Defendant.

---

| | |
|---|---|
| Thomas J. Waters (P37829) | Michael A. Nickerson (P25138) |
| Thaddeus E. Morgan (P47394) | Assistant Attorney General |
| Fraser Trebilcock Davis & Dunlap, P.C. | Public Service Division |
| 124 W. Allegan, Suite 1000 | 6545 Mercantile Way, Suite 15 |
| Lansing, Michigan 48933 | Lansing, Michigan  48911 |
| Telephone:  (517) 482-5800 | Telephone:  (517) 241-6680 |
| Fax: (517) 482-0887 | |
| Attorneys for Plaintiffs | |
| | Michael G. Wilson (P33263) |
| | Consumers Energy Company |
| | One Energy Plaza |
| | Jackson, Michigan  49201 |
| | Telephone:  (517) 788-1255 |
| | Fax:  (517) 768-3141 |

Fraser
Trebilcock
Davis &
Dunlap,
P.C.
Lawyers
Lansing,
Michigan
48933

---

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

STATEMENT OF FACTS ..................................................................................... 1

STANDARD OF REVIEW .................................................................................. 1

ARGUMENT ....................................................................................................... 4

1.  The Federal Power Act and PURPA ....................................................... 4

2.  Summary of Arguments ........................................................................... 6

3.  The MPSC's decision to superimpose state law, MCL 460.6j(6), over PURPA and the Federal Power Act contradicts federal law and is invalid by virtue of the Supremacy clause .................................................................. 7

4.  The MPSC's Order subjects the Michigan QFs to unlawful rate regulation by subjecting the Michigan QFs to annual reasonableness and prudence reviews ..................................................................................................... 10

5.  The MPSC's Order subjects the Michigan QFs to unlawful rate regulation by revising its previous avoided cost determinations for the Michigan QFs ............... 11

    i.  The MPSC previously rejected the use of a sub-bituminous coal-fired generating plant as the proxy plant for determining Consumers' avoided costs ........................................................................................... 11

    ii.  In previously determining Consumers' avoided costs, the MPSC made no allowance for the costs of modifying that plant to burn sub-bituminous coal .................................................................................. 12

    iii.  The State's role in the setting of avoided cost rates is limited ........... 14

    iv.  Once avoided cost rates are set, States may not revise those rates or subvert PURPA ................................................................................. 15

    v.  The MPSC's Opinion and Order revise the Michigan QFs' rates and subvert PURPA ................................................................................. 17

6.  The MPSC's conclusion that PURPA and the FERC regulations are irrelevant constitutes a failure to implement PURPA and the FERC regulations and contradicts federal law .................................................... 18

7.  The Michigan QFs are not being paid avoided costs in violation of 18 C.F.R. §292.304 (2) and 18 C.F.R. §292.101(b)(6), and the MPSC's failure to require Consumers to pay the Michigan QFs its avoided costs constitutes a failure to implement and enforce PURPA and the FERC regulations .................. 19

FRASER
TREBILCOCK
DAVIS &
DUNLAP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

i

8.   The MPSC's Decision unlawfully revises it prior orders and nullifies the Michigan QFs' election to have their avoided costs calculated "up front" for the entire term of their contracts ...................................................................................20

    i.   Introduction ...........................................................................................................20

    ii.   The federal regulations give QFs the option to elect to have their avoided costs calculated "up front." ...................................................................20

    iii.   The Michigan QFs elected to have their avoided costs calculated "up front" for the entire term of their PPAs, based upon Consumers' avoided costs for a bituminous coal fired proxy plant ...........................................................21

    iv.   In its prior orders, the MPSC accepted and ratified the Michigan QFs elected to have their avoided costs calculated "up front" for the entire term of their PPAs...............................................................................................22

    v.   The MPSC's Opinion and Order revises its prior orders and undoes the Michigan QFs' avoided cost elections in violation of federal law.....................22

9.   The MPSC's Decision discriminates against the Michigan QFs in violation of PURPA ...........................................................................................................................23

10.   The MPSC's decision to allow Consumers Energy Company to retain $12,292,142 of avoided cost payments violates federal law..........................................24

FRASER
TREBILCOCK
DAVIS &
DUNLAP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

# TABLE OF AUTHORITIES

**Cases**

*Agrilectric Power Partners, Ltd, v. Entergy Gulf States, Inc*, 207 F.3d 301 (5th Cir. 2000) .................................................................................................................. 15

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................... 1

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...................................................... 2

*Connecticut Light and Power Co.*, 70 FERC 61,012 ....................................... 14, 16

*Emmons v. McLaughlin*, 874 F.2d 351 (6th Cir. 1989)............................................ 2

*Entergy Louisiana, Inc. v. Louisiana Public Service Comm'n*, 539 U.S. 39 (2003) ............... 9

*FERC v. Mississippi*, 456 U.S. 742 (1982), *reh'g. denied*, 458 U.S. 1131 (1982) ................... 4

*Freehold Cogeneration Assoc. L.P. v. Board of Regulatory Comm'rs of N.J.*, 44 F.3d 1178 (3rd Cir 1995), *cert. den*. 516 U.S. 815 (1995) ........................................... 15

*Ind. Energy Producers Ass'n Inc. v. Cal. Pub. Utils. Comm'n*, 36 F.3d 848 (9th Cir 1994) .................................................................................................................. 21

*Martin v. Kelley*, 803 F.2d 236 (6th Cir. 1986)...................................................... 2

*Mississippi Power & Light v. Miss. ex rel. Moore*, 487 U.S. 354 (1988) ................................. 9

*N.Y. State Elec & Gas Corp*, 71 FERC 61,027 ............................................... 14, 16

*Nantahala Power and Light Co. v. Thornburg*, 476 U.S. 953 (1986) ...................... 9

*New England Power Co. v. New Hampshire*, 455 U.S. 331 (1982) ...................... 4, 8

*Niagara Mohawk Power Corp v. FERC*, 162 F.Supp2d 107 (N.D.N.Y. 2001), *aff'd* 306 F.3d 1264 (2nd Cir. 2002) ........................................................................... 15

*Public Utility District No. 1 of Grays Harbor Co. Wash. v. Idacorp, Inc.*, 379 F.3d 641 (9th Cir. 2004)............................................................................................. 9

*Smith Cogeneration Mgmt. Inc. v. Corp. Comm'n & Pub. Serv. Co of Okla*, 863 P.2d 1227, 1239-1240 (Okla 1993)....................................................................... 15, 17

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989).................................. 2

*West Penn Power Co. v. Pa. Pub. Util. Comm'n*, 659 A.2d 1055 (1995) .......... 16, 17

FRASER
TREBILCOCK
DAVIS &
DUNLAP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

## <u>Statutes</u>

16 U.S.C. §791 ............................................................................................................. 4, 6

16 U.S.C. §796 ............................................................................................................... 5

16 U.S.C. §824(b) .......................................................................................................... 6

16 U.S.C. §824a-3 ................................................................................................... passim

16 U.S.C. §824d .............................................................................................................. 8

## <u>Other Authorities</u>

48 Fed. Reg. 29475 ........................................................................................................ 9

Federal Register, Vol. 45, No. 38, Monday, February 25, 1980 p. 12233 ................................ 6

## <u>Regulations</u>

18 C.F.R. §292.101 ........................................................................................... 5, 7, 19, 25

18 C.F.R. §292.301 *et seq.* ........................................................................................... 14

18 C.F.R. §292.401 ................................................................................................... 18, 19

18 C.F.R. §292.602 ........................................................................................... 4, 6, 10, 11

18 C.F.R. §304 ..................................................................................................... 20, 22, 23

FRASER
TREBILCOCK
DAVIS &
DUNLAP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

NOW COME Adrian Energy Associates, LLC, Cadillac Renewable Energy, LLC, Genesee Power Station, LP, Grayling Generating Station, LP, Hillman Power Company, LLC, T.E.S. Filer City Station, LP, Viking Energy of Lincoln, Inc., and Viking Energy of McBain, Inc. ("Intervenors" or "Michigan QFs"), by and through their attorneys, Fraser Trebilcock Davis & Dunlap, P.C., and hereby file their Motion for Summary Judgment.

## STATEMENT OF FACTS

The facts that are relevant to the Plaintiffs' Motion for Summary Judgment are the same as the statement of facts in Plaintiffs' Answer to the Defendants' Motions to Dismiss. Accordingly, the Plaintiffs hereby adopt and incorporate by reference in its entirety the Statement of Facts in their Answer to Defendants' Motions to Dismiss.[1]

## STANDARD OF REVIEW

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56 (c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.* Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in original and added in part).

FRASER
TREBILCOCK
DAVIS &
DUNLAP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

---

[1] All references to exhibits in this brief refer to the same exhibits submitted in connection with Plaintiffs' Answer to Defendants' Motions to Dismiss.

"The moving party bears the burden of satisfying Rule 56(c) standards." *Martin v. Kelley*, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]…must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Liberty Lobby*). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible." *Street*, 886 F.2d at 1480 (citations omitted). See also *Hutt v. Gibson Fiber Glass Products*, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" quoting *Liberty Lobby*).

Application of these standards to the argument and citation of authority below leads to the conclusion that Plaintiff is entitled to summary judgment as a matter of law.

In its Opinion and Order, the MPSC rejected the claims of the Michigan QFs and held that:

> i.  Consumers Energy Company is legally obligated by Act 304, MCL 460.6j (6), to take all appropriate steps to minimize coal costs to its PSCR customers.[2]

FRASER
TREBILCOCK
DAVIS &
DUNLAP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

---

[2] Exhibit LL, MPSC Order, p 19. *See also*, *Id*., p 16.

2

ii.   "The Administrative Law Judge also finds that the QFs' interpretation [of the PPAs] would unreasonably restrict Consumers' ability to comply with its statutory obligation to take actions to minimize its cost of fuel, pursuant to MCL 460.6j (3) and (6)."[3]

iii.  "Consumers' failure to pursue appropriate measures to reduce its PSCR expenses could be deemed unreasonable or imprudent conduct that could lead to the disallowance of costs under Act 304."[4]

iv.   "The [Michigan Public Service] Commission has an obligation pursuant to Act 304 to review the reasonableness and prudence of Consumers' plans to acquire fuel and purchased power to meet the needs of its retail customers during 2004.  Therefore, the reasonableness and prudence of the prices to be paid to the QFs under their power purchase agreements with Consumers are clearly matters that the [Michigan Public Service] Commission may review in a PSCR plan proceeding."[5]

v.    "Consumers' avoided costs . . . are irrelevant in resolving this dispute;"[6]

vi.   "[T]he QFs' contentions regarding the significance of PURPA and the FERC's regulations governing utility purchases from qualifying facilities, are not material to the outcome of this proceeding;[7] and

vii.  "once a contract exists between a qualifying facility and an electric utility, no further or additional reference to PURPA for the FERC rules is necessary."[8]

Thus, the MPSC's conclusion that PURPA and the FERC regulations were irrelevant and immaterial went hand-in-hand with its further conclusion that state law, MCL 460.6j (6), required Consumers Energy Company to minimize its fuel costs.

The MPSC reached these conclusions without addressing the question of whether limiting avoided costs payments to those amounts that a utility can recover under state law violates PURPA and the Federal Power Act.  The MPSC also failed to consider whether its conclusions unlawfully subjected the Michigan QFs to utility-type regulation in violation of

FRASER
TREBILCOCK
DAVIS &
DUNLAP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

---

[3] Exhibit KK, Proposal For Decision, p 48.
[4] Exhibit LL, MPSC Order, p 19.
[5] Exhibit LL, MPSC Order, p 14.
[6] Exhibit KK, PFD, p 53.
[7] Exhibit LL, MPSC Order, p 18.
[8] Exhibit KK, PFD, p 55.

3

16 U.S.C. §824a-3(e)(1) and 18 C.F.R. §292.602, which explicitly exempt qualifying facilities from state laws and regulations regarding the rates of electric utilities.

Because it found that PURPA and the FERC regulations were irrelevant and immaterial, the MPSC refused to consider numerous federal issues raised by the Michigan QFs, including the following: (i) whether a utility complies with its obligation under PURPA to pay a qualifying facility avoided costs when it pays the qualifying facility avoided capacity payments that are calculated on the basis of the cost of a bituminous coal fired generating plant but pays the qualifying facility avoided energy payments that are calculated on the basis of the cost of a type of fuel that the avoided plant would not have burned; (ii) whether Consumers' actions nullified the Michigan QFs' election to have their avoided costs determined "up front" for the entire term of the contract pursuant to 18 C.F.R. §292.304(d)(2)(ii); and (iii) whether its Order and Consumers' actions discriminate against the Michigan QFs in violation of 16 U.S.C. §824a-3(b)(2) and 18 C.F.R. §292.304.

## ARGUMENT

### 1.     The Federal Power Act and PURPA.

Wholesale electric energy transactions are governed by the Federal Power Act. 16 U.S.C. §791a *et. seq.  New England Power Co. v. New Hampshire*, 455 U.S. 331, 340 (1982). In 1978, Congress amended the Federal Power Act by enacting PURPA.  Congress enacted PURPA to alleviate a national energy crisis precipitated by the country's heavy reliance upon foreign energy sources and inefficient uses of energy.  Two of its primary goals were to make this country less dependent upon foreign oil and to control energy prices. *FERC v. Mississippi*, 456 U.S. 742, 745-46 (1982), *reh'g. denied*, 458 U.S. 1131 (1982).

PURPA sought to accomplish these goals in two ways.  First, PURPA encouraged the development of "cogeneration facilities" which use energy more efficiently than traditional

Fraser
Trebilcock
Davis &
Dunlap,
P.C.
Lawyers
Lansing,
Michigan
48933

generation sources by sequentially producing (*i.e.*, cogenerating) electricity and "steam or [other] forms of useful energy (such as heat) which are useful for industrial, commercial, heating or cooling purposes."  16 U.S.C. §796(18)(A).  Second, PURPA encouraged the development of small power production facilities that utilize renewable resources such as solar, wind, or biomass.  Cogeneration and small power production facilities are defined by PURPA as "qualifying facilities" or "QFs."

Section 210 of PURPA overcomes the reluctance of traditional utilities to buy power from alternative energy sources by mandating that they purchase such power at rates which are "just and reasonable to the electric customers of the electric utilities" and which do "not discriminate against qualifying cogenerators or qualifying small power producers."  16 U.S.C. §824a-3 (b).  18 C.F.R. §292.304 (2) requires utilities to purchase electricity made available to them by qualifying facilities at the utility's "*avoided cost*."  The FERC regulations define a utility's avoided cost as "the cost to the electric utility of the electric energy which, but for the purchase from [the qualifying cogeneration or small power production facility] such utility would generate or purchase from another source."  16 U.S.C. §824a-3(d); 18 C.F.R. §292.101(b)(6).

PURPA also encouraged the development of qualifying facilities by minimizing the regulatory burdens placed upon them.  PURPA exempts qualifying facilities from "state laws and regulations respecting the rates, or respecting the financial or organizational regulation, of electric utilities."  16 U.S.C. §824a-3(e)(1).  The FERC rules implement the congressional

FRASER
TREBILCOCK
DAVIS &
DUNLAP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

5

mandate to exempt qualifying facilities from various federal and state ratemaking requirements as follows:[9]

> "(c)  Exemption from certain State law and regulation.
>
> (1)  Any qualifying facility shall be exempted (except as provided in paragraph (c)(2)) of this section from State law or regulation respecting:
>
> (i)     The rates of electric utilities; and
>
> (ii)    The financial and organizational regulation of electric utilities."  18 C.F.R. §292.602

### 2.     Summary of Arguments.

The MPSC's *de facto* conclusion that state law, MCL 460.6j (6), justified Consumers' failure to pay the Michigan QFs avoided costs contradicts the Public Utility Regulatory Policies Act, 16 U.S.C. §824a-3, *et seq.*, the rules of the Federal Energy Regulatory Commission and the Federal Power Act, 16 U.S.C. §791a *et. seq.*, 16 U.S.C. §824(b).  (See, *infra*, Section 3)

The MPSC's Opinion and Order unlawfully subjects the Michigan QFs to utility-type rate regulation in violation of 16 U.S.C. §824a-3 (e)(1) and 18 C.F.R. §292.602, which explicitly exempt qualifying facilities from state law and regulations regarding the rates of electric utilities.  (See, *infra*, Sections 4 and 5)

The MPSC's conclusion that PURPA and the FERC regulations are irrelevant and immaterial constitutes a failure to implement and enforce the Public Utility Regulatory Policies Act in violation of 16 U.S.C. §824a-3(f) and the FERC regulations.  (See, *infra*, Section 6).

Fraser
Trebilcock
Davis &
Dunlap,
P.C.
Lawyers
Lansing,
Michigan
48933

---

[9] To ensure that qualifying facilities would not be subjected to unduly burdensome regulation, the FERC consciously opted in favor of a very broad exemption from state law and regulation. *See*, Federal Register, Vol. 45, No. 38, Monday, February 25, 1980, p 12233.

The MPSC's Opinion and Order has the effects of: (i) permitting Consumers to refuse to pay the Michigan QFs avoided costs in violation of 16 U.S.C. §824a-3(b), 18 C.F.R. §292.304 (2) and 18 C.F.R. §292.101(b)(6) (See, *infra*, Section 7); (ii) unlawfully revising the MPSC's previous avoided cost determinations for the Michigan QFs (See, *infra*, Section 8); (iii) unlawfully nullifying the Michigan QFs' elections to have their avoided costs determined "up front" for the entire term of their contracts pursuant to 18 C.F.R. §292.304 (d)(2)(ii) (See, *infra*, Section 8); and (iv) unlawfully discriminating against the Michigan QFs in violation of 16 U.S.C. §824a-3(b)(2) and 18 C.F.R. §292.304 (See, *infra*, Sections 9 and 10).

> **3.     The MPSC's decision to superimpose state law, MCL 460.6j (6), over PURPA and the Federal Power Act contradicts federal law and is invalid by virtue of the Supremacy clause.**

In her Proposal For Decision, the ALJ rejected the Michigan QFs' avoided cost arguments because "The Administrative Law Judge also finds that the QFs' interpretation [of the PPAs] would unreasonably restrict Consumers' ability to comply with its statutory obligation to take actions to minimize its cost of fuel, pursuant to MCL 460.6j (3) and (6)."[10]

The MPSC agreed with the ALJ in this regard, stating that:

> "The [Michigan Public Service] Commission has an obligation pursuant to Act 304 to review the reasonableness and prudence of Consumers' plans to acquire fuel and purchased power to meet the needs of its retail customers during 2004. Therefore, the reasonableness and prudence of the prices to be paid to the QFs under their power purchase agreements with Consumers are clearly matters that the [Michigan Public Service] Commission may review in a PSCR plan proceeding."[11]

The MPSC further noted that "Consumers Energy Company is legally obligated by Act 304, MCL 460.6j (6), to take all appropriate steps to minimize coal costs to its PSCR customers.  Consumers' failure to pursue appropriate measures to reduce its PSCR expenses

Fraser
Trebilcock
Davis &
Dunlap,
P.C.
Lawyers
Lansing,
Michigan
48933

---

[10] Exhibit KK, PFD, p 48.
[11] Exhibit LL, MPSC Order, p 14.

could be deemed unreasonable or imprudent conduct that could lead to the disallowance of costs under Act 304."[12]

The Michigan law that the MPSC relied upon in reaching the foregoing conclusions authorizes the MPSC to incorporate a Power Supply Cost Recovery (PSCR) clause in the rates of an electric utility.[13]  If the MPSC does so, the utility must file annual PSCR Plan and Recovery cases.[14]  A PSCR clause is statutorily defined as:

> "a clause in the electric rates or rate schedule of a utility which permits the monthly adjustment of rates for power supply to allow the utility to recover the booked costs . . . of fuel burned by the utility for electric generation and booked costs of purchased and net interchanged power transactions by the utility incurred under reasonable and prudent policies and practices." MCL 460.6j (1)(a).

The relevant Michigan statute further provides that, in a PSCR Plan case, the MPSC "shall evaluate the reasonableness and prudence of the decisions underlying the power supply cost recovery plan filed by the utility. . . ."[15]

The MPSC's Opinion and Order applies Act 304 in a manner that explicitly subjects the Michigan QFs' federally mandated avoided cost payments to a multi-layered annual review under state law for reasonableness and prudence.  **That application of Act 304 violates federal law**.

Under the Federal Power Act, FERC is granted the authority to "regulate the transmission and sale at wholesale of electric energy in interstate commerce."  *New England Power Co. v. New Hampshire*, 455 U.S. 331, 340 (1982).   FERC is obligated to ensure that wholesale power rates are "just and reasonable,"  (16 U.S.C. §824d[a]), and applied in a non-

Fraser
Trebilcock
Davis &
Dunlap,
P.C.
Lawyers
Lansing,
Michigan
48933

---

[12] Exhibit LL, MPSC Order, p 19.
[13] MCL 460.6j(2).
[14] MCL 460.6j(3) *et seq.*
[15] MCL 460.6j(6).

discriminatory manner. 16 U.S.C. §824d(b); *Entergy Louisiana, Inc. v. Louisiana Public Service Comm'n*, 539 U.S. 39, 41 (2003).

FERC's authority to determine whether wholesale rates are "just and reasonable" is exclusive. *Nantahala Power and Light Co. v. Thornburg,* 476 U.S. 953, 956 (1986). *Mississippi Power & Light v. Miss. ex rel. Moore*, 487 U.S. 354, 371 (1988).[16] Therefore, the MPSC has no authority to determine whether the wholesale rates to be paid to qualifying facilities are reasonable. The FERC has determined that paying qualifying facilities avoided costs is reasonable.

States must treat FERC mandated rates for wholesale transactions as just and reasonable for purposes of pass through. *Nantahala Power & Light Co v. Thornburg*, 476 US 953, 956 (1986). "[S]tates may not bar regulated utilities from passing through to retail customers FERC-mandated wholesale rates." *Mississippi Power & Light Co v. Miss Ex Rel Moore*, 487 US 354, 372 (1988); *see also*, *Nantahala Power & Light Co v. Thornburg*, *supra*, 476 U.S. at 970.

The Supremacy Clause of the United States Constitution bars states from acting within a zone of exclusive federal jurisdiction. *See, Public Utility District No. 1 of Grays Harbor Co. Wash. v. Idacorp, Inc.*, 379 F.3d 641, 647 (9th Cir. 2004).

By (i) subjecting the Michigan QFs' avoided cost payments to a reasonableness and prudence test under state law, and by (ii) concluding that Michigan's Act 304 required Consumers' to minimize its fuel costs and to calculate the Michigan QFs' energy rate on the basis of those minimized fuel costs, without regard to Consumers' federal obligation to pay

FRASER
TREBILCOCK
DAVIS &
DUNLAP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

---

[16] FERC, in its Policy Statement Regarding the Commission's Enforcement Role Under Section 210 of the Public Utility Regulatory policies Act of 1978 explicitly reserved as its exclusive area of enforcement the rates for sales of power in interstate commerce by QFs under Part II of the Federal Power Act. *See*, 48 Fed. Reg. 29475, at 29477 (June 27, 1983).

the Michigan QFs' avoided costs, the MPSC encroached upon FERC's plenary authority to determine wholesale rates.  18 C.F.R. §292.304 (2) requires utilities to purchase electricity made available to them by qualifying facilities at the utility's "avoided cost."  PURPA and the FERC's regulations do not permit a state regulatory authority to determine reasonableness and prudence and do not permit a state regulatory authority to reduce avoided cost payments to those amounts that may be recovered under state law.

  **4.**  **The MPSC's Order subjects the Michigan QFs to unlawful rate regulation by subjecting the Michigan QFs to annual reasonableness and prudence reviews.**

  PURPA exempts qualifying facilities from most of the provisions of the Federal Power Act and further exempts them from "state laws and regulations respecting the rates, or respecting the financial or organizational regulation, of electric utilities."  16 U.S.C. §824a-3 (e)(1) and 18 C.F.R. §292.602.

  Notwithstanding the exemptions of 16 U.S.C. §824a-3 (e)(1) and 18 C.F.R. §292.602, the MPSC explicitly made the rates and charges payable to the Michigan QFs subject to an annual review for reasonableness and prudence under state law.  The MPSC's Opinion and Order concludes both that:

> "Therefore, the reasonableness and prudence of the prices to be paid to the QFs under their power purchase agreements with Consumers are clearly matters that the [Michigan Public Service] Commission may review in a PSCR plan proceeding."[17]

and that:

> "Consumers Energy Company is legally obligated by Act 304, MCL 460.6j (6), to take all appropriate steps to minimize coal costs to its PSCR customers. Consumers' failure to pursue appropriate measures to reduce its PSCR expenses could be deemed unreasonable or imprudent conduct that could lead to the disallowance of costs under Act 304."[18]

Fraser
Trebilcock
Davis &
Dunlap,
P.C.
Lawyers
Lansing,
Michigan
48933

---

[17] Exhibit LL, MPSC Order, p 14.
[18] Exhibit LL, MPSC Order, p 19.

These conclusions unlawfully subject the Michigan QFs to utility-type rate regulation in violation of 16 U.S.C. §824a-3(e)(1) and 18 C.F.R. §292.602.   16 U.S.C. §824a-3(e)(1) and 18 C.F.R. §292.602 explicitly exempt qualifying facilities from state laws and regulations regarding the rates of electric utilities, including MCL 460.6j (6).

> **5.    The MPSC's Order subjects the Michigan QFs to unlawful rate regulation by revising its previous avoided cost determinations for the Michigan QFs.**
>
> > **i.    The MPSC previously rejected the use of a sub-bituminous coal-fired generating plant as the proxy plant for determining Consumers' avoided costs.**

The MPSC's Opinion and Order also violates the prohibitions of 16 U.S.C. §824a-3 (e)(1) and 18 C.F.R. §292.602 by revising its previous avoided cost determinations for the Michigan QFs.

The costs that Consumers Energy Company avoided by purchasing electricity from the Michigan QFs were the costs of a bituminous coal-fired generating plant.   Consumers admitted that the costs it avoided by purchasing electricity from the Michigan QFs were the costs associated with a high sulfur coal-fired generating plant.[19]  Consumers admitted that the Michigan QFs are not being paid the avoided energy costs of a bituminous coal-fired generating plant.[20]

Consumers paid the Michigan QFs the avoided costs of a bituminous coal-fired generating plant until it spent more than $500,000,000 modifying its Base Plants to burn a type of fuel that the avoided plant would not have burned and unilaterally began calculating the Michigan QFs' energy rates on the basis of the cost of that changed fuel.

Fraser
Trebilcock
Davis &
Dunlap,
P.C.
Lawyers
Lansing,
Michigan
48933

---

[19] Exhibit B,  pp 576-577.  *See also*, Exhibit B, p 508.
[20] Exhibit B, p 586.

11

Consumers is now paying the Michigan QFs the *energy* costs primarily of a sub-bituminous coal-fired generating plant in spite if the fact that the MPSC rejected the possibility of using a sub-bituminous coal-fired generating plant as the proxy plant for determining Consumers' avoided capacity and energy costs in MPSC Case No. U-8871, *et al.*[21] Consumers has also admitted that it is possible to conclude that the Michigan QFs are no longer being paid an energy rate that is calculated on the basis of avoided costs because the Base Plants were modified so they no longer burn the same type of coal that the avoided plant would have burned.[22]

Notwithstanding all of the above, the MPSC has now authorized Consumers to calculate the QFs' energy rate on the basis of the cost of sub-bituminous coal or *any* type of coal, including peat if Consumers modifies its Base Plants to burn peat.[23]

ii.     **In previously determining Consumers' avoided costs, the MPSC made no allowance for the costs of modifying that plant to burn sub-bituminous coal.**

As also shown in the Statement of Facts[24], it is beyond dispute that the MPSC's previous avoided cost determinations in Case No. U-8871, *et al.*, (and the earlier MPSC proceedings) did not include a finding that the avoided plant (i.e., the bituminous coal-fired generating plant) would be modified to burn sub-bituminous coal during the life of the PPAs. Despite this, the MPSC simply disregarded its prior orders and finds that the bituminous coal-fired generating plant that it previously selected as the proxy for determining Consumers' avoided costs would have been modified to burn sub-bituminous coal.[25]

Fraser
Trebilcock
Davis &
Dunlap,
P.C.
Lawyers
Lansing,
Michigan
48933

---

[21] *See* Section A(9) of Statement of Facts in Plaintiffs' Answer to Defendants' Motion to Dismiss.
[22] Exhibit B, p 614.
[23] Exhibit B, pp 641-642.
[24] *See* Statement of Facts in Plaintiffs' Answer to Defendants' Motion to Dismiss.
[25] Exhibit KK, PFD, pp 51-52.

In his rebuttal testimony on behalf of Consumers Energy Company, Mr. Ronk opined that "for the same reasons that have caused Consumers to gradually switch its existing coal-fired plants to western coal, I think it is likely that the proxy plant would have also been gradually switched to western coal."[26]   The MPSC accepted Mr. Ronk's speculation in this regard and concluded that:  "the evidence shows that it is not realistic for the QFs to assume that the proxy plant would have continued to burn high sulfur coal over its entire assumed operating life."[27]

Contrary to the MPSC's conclusion, its prior orders and calculation of avoided costs made clear that the avoided plant was a bituminous coal-fired generating plant, and made no allowance for a subsequent conversion to sub-bituminous coal or any other type of fuel.[28]  If it had, the Michigan QFs' capacity rate would have been higher.  It is, therefore, neither necessary nor appropriate to now make different assumptions about whether the proxy plant would have been modified to burn a different type of coal.  The MPSC's Order simply ignores both Consumers' sworn testimony and its own prior orders which could have, but did not, determine that the proxy plant would have been modified to burn sub-bituminous coal during the 35-year lives of the PPAs.[29]

Interestingly, the MPSC's erroneous conclusion that the proxy plant would have been modified to burn western coal proves that the Michigan QFs are no longer being paid avoided costs.[30]  If the MPSC had determined in its 1980's Orders that the avoided unit would have been modified to sub-bituminous coal, then PURPA would have required Consumers to pay the Michigan QFs those modification costs.  The costs that Consumers incurred to modify its

Fraser
Trebilcock
Davis &
Dunlap,
P.C.
Lawyers
Lansing,
Michigan
48933

---

[26] Exhibit B, p 547.
[27] Exhibit KK, PFD, p 51.
[28] Exhibit J, p 1046-1048.
[29] *Id.*
[30] Exhibit B, p 547.

Base Plants, however, are not reflected in any of the rates paid to the Michigan QFs, neither the *capacity* rates nor *energy* rates.[31]  Consumers has admitted this.[32]  The Michigan QFs are not being paid the avoided costs of a bituminous coal fired generating plant and, in fact, are not even being paid the avoided costs of a bituminous coal fired generating plant that was modified to burn sub-bituminous coal.  These facts are undisputed.  Consumers is breaching its obligation under federal law to pay the Michigan QFs avoided costs.

### iii.    The State's role in the setting of avoided cost rates is limited.

The States' role in the sale of electricity by Michigan QFs to traditional utilities is limited.  In enacting PURPA, Congress directed the FERC, not state regulatory agencies, to prescribe the rules governing QF rates.  *N.Y. State Elec & Gas Corp*, 71 FERC 61,027, at p 1.  Sales of electric energy generated by qualifying facilities are wholesale transactions, and are governed by federal law.   16 U.S.C. §824a-3(a).[33]   Under PURPA, the states merely implement the standards mandated by FERC.  QF rates are FERC mandated rates.  *Id*.

PURPA allows states a limited opportunity to determine (pursuant to the FERC rules regarding the calculation of such costs) the avoided costs that an electric utility must pay to a QF for its electric generation. 18 C.F.R. §292.301 *et seq*.  The FERC has described the States' limited role in setting rates for qualifying facilities as follows:[34]

> "For QFs, jurisdiction over rates for sales at wholesale is vested in this Commission.  PURPA expressly directed this Commission, and not the states, to prescribe rules governing QF rates.  PURPA gave the states responsibility only for "implementing" the Commission rules."

FRASER
TREBILCOCK
DAVIS &
DUNLAP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

---

[31] *See*, Section A(2.)(iii) of Statement of of Facts in Plaintiffs' Answer to Defendants' Motion to Dismiss; *see also* Exhibit B, p 598.

[32] Exhibit B, p 514. "There is no provision in the PPA's for adjustments to this capacity charge to reflect modifications to the hypothetical proxy unit that might have been made over the course of its useful life had the unit actually been constructed, or to address changes in fixed costs or operating characteristics that might develop over the useful life of the proxy unit had such a unit been constructed." *Id*.

[33] The end users of all such electric power are retail customers, not the utilities to whom the electricity is initially sold.

[34] *Connecticut Light and Power Co.*, 70 FERC 61,012, at p 7 (1995).

14

iv.    **Once avoided cost rates are set, States may not revise those rates or subvert PURPA.**

Once avoided cost rates are set, States may not revise those rates or subvert PURPA**.** *Freehold Cogeneration Assoc. L.P. v. Board of Regulatory Comm'rs of N.J.*, 44 F.3d 1178, 1194 (3rd Cir 1995), *cert. den*. 516 U.S. 815 (1995) held as follows:

> "Once the [State Commission] approved the power purchase agreement between [the QF] and [the utility] on the ground that the rates were consistent with avoided cost, any action or order by the [State Commission] to reconsider its approval or to deny the passage of those rates to [the utility's] consumers under purported state authority was preempted by federal law."

PURPA conclusively establishes that state regulatory agencies may not alter wholesale price terms in PPAs between QFs and utilities.  *See, Agrilectric Power Partners, Ltd, v. Entergy Gulf States, Inc*, 207 F.3d 301, 303 (5th Cir. 2000);  *Freehold Cogeneration Assoc, LP*, 44 F.3d 1178, 1192 (3rd Cir. 1995).  The MPSC's Opinion and Order impermissibly alters the pre-existing PPAs between the Michigan QFs and Consumers by authorizing Consumers to refuse to pay the Michigan QFs avoided costs.  It does so *without* any reference to or consideration of PURPA's requirements.  Furthermore, it relies upon state law to do so.  Modification of pre-existing QF contracts in this fashion is "exactly the type of regulation from which [the QFs] are immune under Section 210(e) [of PURPA]."  *Niagara Mohawk Power Corp v. FERC*, 162 F.Supp2d 107, 145 (N.D.N.Y. 2001), *aff'd* 306 F.3d 1264 (2nd Cir. 2002) (quoting *Freehold, supra,* 44 F.3d at 1192).

Not even changed circumstances justify modifying the rates paid to a qualifying facility.  In *Smith Cogeneration Mgmt Inc v. Corp Comm'n & Pub Serv Co of Okla*, 863 P2d 1227, 1239-1240 (Okla 1993), the Oklahoma Supreme Court unequivocally held that:

> "We noted earlier that avoided costs can be calculated at the time of delivery or at the time the obligation is incurred.  **If a**

Fraser
Trebilcock
Davis &
Dunlap,
P.C.
Lawyers
Lansing,
Michigan
48933

15

**cogenerator chooses the latter method of calculation, as did Smith, it has the right to receive the benefits of the contract even if, due to changed circumstances, the contract price for the power at the time of delivery is unfavorable to the utility.**"

\* \* \*

"FERC regulations also grant cogenerators the right to negotiate a long term purchase contract with the price of power to be purchased based on the avoided costs of the utility calculated at the time of delivery or at the time the obligation is incurred. **Should a cogenerator choose the latter method of calculation, it has the right to receive the benefits of the contract even if, due to changed circumstances, the contract price for the power at the time of delivery is unfavorable to the utility.**" 863 P2d at 1239-40 (emphasis added).

*Accord*: *West Penn Power Co. v. Pa. Pub. Util. Comm'n*, 659 A.2d 1055, 1060-61 (1995).

The Federal Energy Regulatory Commission has also concluded that changed market conditions do not justify altering previously approved QF contracts or avoided cost determinations.  In *N.Y. State Elec. & Gas Corp.*, 71 FERC 61,027, at p14, the FERC noted that:[35]

"... PURPA do[es] not prohibit rates for purchases from QFs that (1) are based on estimates of a utility's avoided costs calculated at the time the obligation is incurred and (2) subsequently differ from the utility's actual avoided costs at the time of delivery.  Moreover, as we indicated in two recent orders, and as we explain further below, **we will not disturb existing QF contracts containing such purchase rates if the contracts were not challenged at the time they were signed and are not now the subject of an ongoing challenge to the State's avoided cost determination.  NYSEG has presented no legitimate reason for us to depart from the holdings of these orders in this regard and to upset long-term contracts with Lockport and Saranac which were the basis for the financing and construction of the QF projects and under**

FRASER
TREBILCOCK
DAVIS &
DUNLAP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

---

[35] The FERC reached the same result in *Connecticut Light and Power Co.*, 70 FERC 61,012; 1995 FERC 37.

**which the parties have been providing and paying for service**." 71 FERC 61,027 at p 14 (emphasis added)

The logic in recognizing the sanctity of QF contracts is manifest. As the Oklahoma Supreme Court noted in *Smith Cogeneration*,

> **"The import of this section [45 Federal Register 12224 (Feb. 25, 1980)] is to ensure that a qualifying facility which has obtained the certainty of an arrangement is not deprived of the benefits of its commitment as a result of changed circumstances.** This provision can also work to preserve the bargain entered into by the electric utility; should the actual avoided cost be higher than those contracted for, the electric utility is nevertheless entitled to retain the benefit of its contracted for or otherwise legally enforceable, lower price for purchases from the qualifying facility. This subparagraph will thus ensure the certainty of rates for purchases from a qualifying facility which enters into a commitment to deliver energy or capacity to a utility." 863 P2d at 1240.

As recognized by the FERC in *NY State Elec & Gas Corp*,

> "**As wholesale markets become more competitive, respecting contracts becomes increasingly important. Industry participants (and their investors) will rely more heavily on contractual, instead of regulatory, protection. If financing generation becomes more difficult or even impossible because contracts are not respected, wholesale competition will diminish. This result would be contrary to this MPSC's goals and to the Congressional intent expressed in the Energy Policy Act of 1992.**" 71 FERC 61,027, at pp 17 (emphasis added) (footnotes omitted).

*See also*, *Re: Maine Public Service Co.*, Slip. Op. at p. 11-12; 1995 West Law 84804 (Me. PUC), and *West Penn Power Co. v. Pa. Pub. Util. Comm'n*, 659 A.2d at 1065-66.

> **v.   The MPSC's Opinion and Order revise the Michigan QFs' rates and subvert PURPA.**

PURPA and the FERC regulations protect the sanctity of QF contracts and require utilities to pay QFs avoided costs. The above law and logic notwithstanding, the MPSC's Order authorizes Consumers to switch from paying the Michigan QFs a bituminous coal

Fraser
Trebilcock
Davis &
Dunlap,
P.C.
Lawyers
Lansing,
Michigan
48933

based energy rate to paying the Michigan QFs a sub-bituminous coal based energy rate.  The MPSC's Order also impermissibly revises its prior orders and avoided cost determinations when it concludes that the bituminous coal-fired generating plant that the MPSC previously selected as the proxy for determining Consumers' avoided costs would have been modified to burn sub-bituminous coal.[36]

> **6.      The MPSC's conclusion that PURPA and the FERC regulations are irrelevant constitutes a failure to implement PURPA and the FERC regulations and contradicts federal law.**

PURPA requires state regulatory authorities to implement PURPA and the FERC's regulations. 16 U.S.C. §824a-3(f) and 18 C.F.R. §292.401.  A state regulatory authority's failure to implement PURPA and the FERC Regulations can occur in a specific case, as it did here:

> The Commission believes that review and enforcement of implementation under Section 210 of PURPA can consist not only of review and enforcement as to whether the State regulatory authority or nonregulated electric utility has conducted the initial implementation properly, namely, put into effect regulations implementing Section 210 rules or procedures for that implementation, after notice and an opportunity for a hearing.  It can also consist of review and enforcement of the application by a State regulatory authority or nonregulated electric utility, on a case-by-case basis, of its regulations or of any other provisions it may have adopted to implement the Commission's rules under Section 210.[37]

In her PFD, the state ALJ concluded that "once a contract exists between a qualifying facility and an electric utility, no further or additional reference to PURPA or the FERC rules is necessary."[38]  She further concluded that "Consumers' avoided costs . . . are irrelevant in resolving this dispute."[39]

Fraser Trebilcock Davis & Dunlap, P.C. Lawyers Lansing, Michigan 48933

---

[36] Exhibit KK, PFD, pp 51-52.
[37] Policy Statement Regarding the Commission's Enforcement Role Under Section 210 of the Public Utility Regulatory Policies Act of 1978, 23 F.E.R.C. ¶ 61,304 at 61,646 (1983).  (emphasis added).
[38] Exhibit KK, PFD, p 55.
[39] Exhibit KK, PFD, p 53.

The ALJ is simply in error.  PURPA and the FERC regulations are not irrelevant or immaterial.  The MPSC's conclusion to the contrary constitutes a failure to implement and enforce PURPA and the FERC regulations in violation of 16 U.S.C. §824a-3(f) and 18 C.F.R. §292.401.  The Michigan QFs' claims cannot be resolved without reference to PURPA and the FERC Regulations.  Analyzing the dispute between the Michigan QFs and Consumers in the context of PURPA and the FERC regulations leaves no doubt that the Michigan QFs are not being paid avoided costs, in violation of their PPAs and federal law.

> **7.    The Michigan QFs are not being paid avoided costs in violation of 18 C.F.R. §292.304 (2) and 18 C.F.R. §292.101 (b)(6), and the MPSC's failure to require Consumers to pay the Michigan QFs its avoided costs constitutes a failure to implement and enforce PURPA and the FERC regulations.**

Consumers is paying the Michigan QFs the lower energy cost of sub-bituminous coal, but not paying them any portion of the capital costs that the company incurred to modify its Base Plants to burn sub-bituminous coal.[40]  Consumers chooses neither the low-capital, high-energy cost model originally used as the proxy plant for this PPA, nor the high-capital, low-energy cost plant rejected as the proxy. *It is paying the Michigan QFs the costs of a proxy that never has existed and cannot exist*.  Thus, Consumers Energy Company is not paying the Michigan QFs avoided costs in violation of 18 C.F.R. §292.304 (2) and 18 C.F.R. §292.101(b)(6).  Moreover, the MPSC is permitting Consumers to reap a huge windfall at the expense of the Michigan QFs.[41]

Fraser
Trebilcock
Davis &
Dunlap,
P.C.
Lawyers
Lansing,
Michigan
48933

---

[40] Exhibit B, pp 634-636.
[41]  The proofs demonstrated that Consumers intends to drive the QFs out of business, apparently with the consent and support of the MPSC.

8.      **The MPSC's Decision unlawfully revises it prior orders and nullifies the Michigan QFs' election to have their avoided costs calculated "up front" for the entire term of their contracts.**

      i.      **Introduction.**

In its Decision, the MPSC refused to consider the Michigan QFs' contention that, because they elected to have their avoided costs determined "up front" for the entire term of their contracts based upon Consumers' avoided costs, pursuant 18 C.F.R. §292.304 (d)(2)(i), they are entitled to be paid those costs for the full term of their contracts.[42]   The MPSC refused to consider this claim because the ALJ found that "the inquiry relative to this dispute is whether Consumers has been correctly administering the energy charge calculation methodology specified in its <u>contracts</u> with the Michigan QFs, specifically, Exhibit A."[43]

      ii.      **The federal regulations give QFs the option to elect to have their avoided costs calculated "up front."**

Under PURPA, each qualifying facility must make an election when it signs a power purchase agreement with a utility.  The election relates to the manner in which the "avoided cost" payment rates will be calculated.  The QF can choose either (a) to have the rates calculated on the basis of the costs that the utility actually avoids at the times when the QF delivers electricity pursuant to 18 C.F.R. §292.304(d)(2)(i) or, in the alternative, (b) to have the payment rates calculated on the basis of projected costs that the utility is presumed to have avoided at the time when it originally signs the power purchase agreement with the QF pursuant to 18 C.F.R. §304(d)(2)(ii).[44]

F RASER
T REBILCOCK
D AVIS &
D UNLAP,
P.C.
L AWYERS
L ANSING,
M ICHIGAN
48933

---

[42] Exhibit KK, PFD, pp 55-56.
[43] Exhibit KK, PFD, p 55.
[44] In this regard, 18 C.F.R. §292.304(d)(2) provides as follows:
      "Each qualifying facility shall have the option either:
(2) To provide energy or capacity pursuant to a legally enforceable obligation for the delivery of energy or capacity over a specified term, in which case the rates for such purchases shall, at the option of the qualifying facility exercised prior to the beginning of the specified term, be based on ***either***:
      (i)      The avoided costs calculated at the time of delivery; ***or***
      (ii)      The avoided costs calculated at the time the obligation is incurred."

Option (a) is essentially real time incremental pricing based on variable future market conditions, while option (b) requires the state regulatory agency (the MPSC in Michigan) to select a specific "proxy plant" the construction of which the utility is presumed to have avoided by instead purchasing power from the QF.  *See also*, *Ind. Energy Producers Ass'n Inc. v. Cal. Pub. Utils. Comm'n*, 36 F.3d 848, at 851-52 (9th Cir 1994).

If the Renewable QFs had selected option (a) pursuant to 18 C.F.R. §292.304(d)(i), which they did not, the MPSC would not have been required to determine what plant Consumers avoided by entering the PPAs with the Renewable QFs.   In that case, the avoided costs to which the Michigan QFs would have entitled would simply have been the market price of power at the time the electricity was delivered to Consumers

### iii.    The Michigan QFs elected to have their avoided costs calculated "up front" for the entire term of their PPAs, based upon Consumers' avoided costs for a bituminous coal fired proxy plant.

In the case at bar, the Michigan QFs each selected option (b) pursuant to 18 C.F.R. 292.304(d)(ii).  The witnesses for the QFs, who have personal knowledge of this matter, all testified that the QFs chose to lock in their avoided costs as of the time they signed Power Purchase Agreements with Consumers.[45]

The manner in which consumers pays the Michigan QFs under their PPAs confirms the nature of the Michigan QFs' avoided cost elections.  The cost of electricity at the time of delivery is the utility's overall marginal energy costs at the time of delivery, not the energy costs of any particular plant.  If the QFs' energy charge were "calculated at the time of delivery," the QFs' energy rates would vary hour-by-hour to reflect the utility's marginal costs at any given point in time. These costs might be the costs of its base load plants.  But

Fraser
Trebilcock
Davis &
Dunlap,
P.C.
Lawyers
Lansing,
Michigan
48933

---

[45] Exhibit D,  p 733; Exhibit Y, p 872; Exhibit Z, p 907.

they might also be the costs of Consumers' intermediate plants or its peaking plants. Energy payments calculated at the time of delivery would necessarily range from high costs in times of peak loads to low costs in times of low load. That is not how Consumers is calculating the QFs' energy charge.

      **iv.    In its prior orders, the MPSC accepted and ratified the Michigan QFs elected to have their avoided costs calculated "up front" for the entire term of their PPAs.**

Because the Michigan QFs each selected option (b) pursuant to 18 C.F.R. 292.304(d)(ii), the MPSC was required to select a proxy plant for determining the avoided cost rates to be paid to the Michigan QFs. The MPSC did so and determined that, by purchasing power from the Michigan QFs, Consumers would avoid the costs of a bituminous coal fired generating plant. In making that determination, the MPSC accepted and ratified the Michigan QFs' election to have their avoided costs calculated on the basis of projected costs that the utility avoided at the time when it originally signed the power purchase agreement with the Michigan QFs pursuant to 18 C.F.R. §304(d)(2)(ii).

This meant that for the entire term of the PPAs, the rates paid to the Michigan QFs must be based on the costs of the hypothetical bituminous coal-fired generating plant that Consumers was deemed to have avoided at the time when the Michigan QFs' PPAs were signed.

      **v.    The MPSC's Opinion and Order revises its prior orders and undoes the Michigan QFs' avoided cost elections in violation of federal law.**

The MPSC's Opinion and Order revises its prior orders and nullifies the Michigan QFs' previous elections regarding the manner in which the "avoided cost" payment rates would be calculated (i.e., for the full term of their contracts as of the time they incurred their obligation to Consumers).

FRASER
TREBILCOCK
DAVIS &
DUNLAP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

22

The MPSC previously determined that the costs Consumers would avoid by purchasing electricity from the Michigan QFs were the costs of a bituminous coal-fired generating plant.  The MPSC previously rejected the use of a sub-bituminous coal fired generating plant for determining Consumers' avoided costs.[46]  The MPSC also previously rejected the use of a bituminous coal fired generating plant that would be modified during its lifetime to burn sub-bituminous coal for determining Consumers' avoided costs.[47]  Despite this, the MPSC has now authorized Consumers to revise the energy rates it pays the Michigan QFs to pay them the energy costs of a sub-bituminous coal fired generating plant.

The MPSC's switch in this regard un-does the Michigan QFs' elections to lock in the manner in which their "avoided cost" rates would be calculated.  Because it found that PURPA and the FERC regulations were 'irrelevant' and 'immaterial,' the MPSC wrongly ignored the Michigan QFs' claim that revising their energy rates in this way violates the requirements of 18 C.F.R. §304(d)(2)(ii).

> **9.**    **The MPSC's Decision discriminates against the Michigan QFs in violation of PURPA.**

The MPSC's Order also discriminates against the Michigan QFs in violation of PURPA and the FERC regulations.

PURPA, 16 U.S.C. §824a-3 (b)(2), and the FERC regulations, 18 C.F.R. §292.304(a)(ii), prohibit utilities and state regulatory agencies from discriminating against qualifying facilities.  16 U.S.C. §824a-3(b)(2) requires utilities to purchase electricity from QFs at rates that do "not discriminate against qualifying facilities or qualifying small power producers."    The FERC complied with this congressional mandate in issuing 18 C.F.R.

Fraser
Trebilcock
Davis &
Dunlap,
P.C.
Lawyers
Lansing,
Michigan
48933

---

[46]*See* Exhibit M; Exhibit N.
[47] Exhibit J, p 1046-1048.

§292.304(a)(ii) which mandates that rates for purchases from qualifying facilities "not discriminate against qualifying co-generation and small power production facilities."

The MPSC's Order authorizes Consumers' to pay the Michigan QFs rates for purchases that, in fact, discriminate against those QFs. If Consumers had built a sub-bituminous coal-fired generating plant instead of entering into the PPAs with the Michigan QFs, Consumers would have recovered the higher capacity costs of that plant from its ratepayers. Despite this fact, Consumers is not paying the Michigan QFs the higher capacity costs of a sub-bituminous coal-fired generating plant. If Consumers had, instead, built a bituminous coal-fired generating plant and later modified that plant to burn sub-bituminous coal, rather than entering into the PPAs with the Michigan QFs, Consumers would have recovered those modification costs from its ratepayers. Despite this fact, Consumers is not paying the Michigan QFs the costs that it incurred to modify its Base Plants to burn sub-bituminous coal. Consumers is paying the Michigan QFs the lower capital costs of a bituminous coal-fired generating plant and the lower energy costs of a sub-bituminous coal-fired generating plant. Consumers is thus paying the Michigan QFs rates that discriminate against them in violation of 16 U.S.C. §824a-3 (b)(2) and 18 C.F.R. §292.304(a)(ii).

    **10.    The MPSC's decision to allow Consumers Energy Company to retain $12,292,142 of avoided cost payments violates federal law.**

One of the claims which the Michigan QFs made during the course of the proceedings before the MPSC was that Consumers Energy collected $12,292,141 of avoided cost payments from its retail customers for the period from 1998-2003, but wrongfully refused to pay those amounts to the Michigan QFs. As the MPSC noted, "the ALJ properly ignored this issue."[48]

Fraser
Trebilcock
Davis &
Dunlap,
P.C.
Lawyers
Lansing,
Michigan
48933

---

[48] Exhibit LL, MPSC Order, p 22.

PURPA is not a procedural device which allows utilities, such as Consumers, to enrich itself at the expense of the Michigan QFs.  PURPA requires utilities to pay QFs the utility's avoided costs.  PURPA does not permit utilities to retain avoided cost payments that its ratepayers have paid to the utility for electricity that was generated by QFs.  PURPA forbids utilities from discriminating against qualifying facilities.  The MPSC's failure to require Consumers to pay the avoided cost payments that the utility collected from its ratepayers to the Michigan QFs constitutes both a failure to pay the Michigan QFs avoided costs in violation of 18 C.F.R. §292.304 (2) and 18 C.F.R. §292.101(b)(6) and a decision to discriminate against the Michigan QFs in violation of 16 U.S.C. §824a-3 (b)(2) and 18 C.F.R. §292.304(a)(ii).

WHEREFORE, the Michigan QFs respectfully request that this Honorable Court issue an order granting them summary disposition pursuant to Federal Rule of Civil Procedure 56.

*Respectfully submitted,*

**FRASER TREBILCOCK DAVIS & DUNLAP, P.C.**
Attorneys for Plaintiffs

Dated: _____     By: _____

                                       Thomas J. Waters (P37829)
                                       Thaddeus E. Morgan (P47394)
                                       124 West Allegan Street, Suite 1000
                                       Lansing, Michigan 48933
                                       (517) 482-5800

FRASER
TREBILCOCK
DAVIS &
DUNLAP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933

## <u>CERTIFICATE OF  SERVICE</u>

I hereby certify that Plaintiffs' Brief in Support of Motion for Summary Judgment was filed electronically on July 15, 2005.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.  Exhibits to the Brief were filed in the traditional manner and copies were served upon the parties via first-class mail, postage prepaid.

s/      Thomas J. Waters
Thomas J. Waters (P37829)

FRASER
TREBILCOCK
DAVIS &
DUNLAP,
P.C.
LAWYERS
LANSING,
MICHIGAN
48933