UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ADRIAN ENERGY ASSOCIATES, LLC,
*et al.,*

               Plaintiffs,

v.

MICHIGAN PUBLIC SERVICE
COMMISSION, *et al.*,

               Defendants,
and

CONSUMERS ENERGY COMPANY,

               Intervenor/Defendant.
_____/

Case No. 5:05-CV-60

Hon. Richard Alan Enslen

**OPINION**

      This matter is before the Court on Defendants Michigan Public Service Commission ("MPSC") and Commissioners J. Peter Lark, Robert B. Nelson and Laura Chapelle's Motion to Dismiss the First Amended Complaint. Also pending before the Court is Intervenor/Defendant Consumers Energy Company's Motion to Dismiss the First Amended Complaint, which urges dismissal on similar grounds. The legal questions posed are complicated, but the Court has been aided by thorough and extensive briefing from the parties such that oral argument is unnecessary.

      **BACKGROUND**

      There are eight Plaintiff companies involved in this suit: (1) Adrian Energy Associates, LLC (which operates a 2.4 Megawatt landfill gas-fired electric generating station around Adrian, Michigan, First Am. Compl. ¶¶ 8-9); (2) Cadillac Renewable Energy, LLC (which operates a 34 Megawatt wood-fired electric generating station around Cadillac, Michigan, *id.* ¶¶ 12-13);

(3) Genesee Power Station, LP (which operates a wood-fired electric generating station around Genesee Township, Michigan, *id.* ¶¶ 16-17); (4) Grayling Generating Station, LP (which operates a wood-fired electric generating station around Grayling Township, Michigan, *id.* ¶¶ 20-21); (5) Hillman Power Company, LLC (which operates a wood-fired electric generating station around Hillman, Michigan, *id.* ¶¶ 24-25); (6) T.E.S. Filer City Station, LP (which operates a coal, waste wood and chip-tire fired electric generating plant around Filer City, Michigan, *id.* ¶¶ 28-29); (7) Viking Energy of Lincoln, Inc. (which operates an 18 Megawatt wood-fired electric generating station around Lincoln, Michigan, *id.* ¶¶ 32-33); and (8) Viking Energy of McBain, Inc. (which operates an 18 Megawatt wood-fired electric generating station around McBain, Michigan, *id.* ¶¶ 36-37).

Now what do each of these power-producers have in common other than an axe to grind against the MPSC?  Answer:  each of their facilities are a "qualifying facility" for the purpose of federal regulation under the Public Utility Regulatory Policies Act of 1978, 16 U.S.C. §§ 824a-3 *et seq.* ("PURPA"), each of them have entered into purchase agreements to sell power to Consumers Energy Company ("Consumers"),[1] *id.* ¶¶ 8-39, and each of them believe that Consumers has underpaid on the agreements.  Plaintiffs figure that they have not been paid their complete "avoided costs" in accordance with the agreements and federal regulation, 18 C.F.R. § 292.304(d).  (*Id.* ¶¶ 47 & 60.)  Plaintiffs contend that they were cheated when the MPSC recalculated the payment formula for "avoided costs" to reflect a different fuel mix (*i.e.,* to reflect a change in the kind of coal that a proxy plant supposedly would have burned).  (*Id.* ¶ 59.)  Stated another way, Plaintiffs are

---

[1]The purpose and structure of PURPA is explained well in *Am. Paper Inst. v. Am. Elec. Power Serv. Corp.,* 461 U.S. 402, 413-14 (1983) and *N. Am. Natural Res., Inc. v. Strand*, 252 F.3d 808, 810 (6th Cir. 2001).

being paid based on the costs of the operation of a coal electric plant (because the use of their power makes the operation of such a plant unnecessary) and Plaintiffs contend that Defendants have under-represented those costs by misstating what fuel (western sub-bituminous coal versus eastern bituminous coal) such a hypothetical plant would have used. (*See id.*)   This is a 20 million dollar dispute. (*Id.* ¶ 61.)   Additionally, Plaintiffs seek reimbursement of $12,292,142 from a reimbursement fund collected by Consumers for the purpose of reimbursement of avoided cost energy charges.[2] (*Id.* ¶ 63.)

As might be expected, this is the kind of dispute which employs many a lawyer, court and governmental agency.  Plaintiffs first filed suit before the Ingham County Circuit Court on October 14, 2003. (*Id.* ¶ 69.)  The Ingham County Circuit Court held that this dispute was a fee/rate dispute as to which the MPSC had primary jurisdiction, and issued an order on February 12, 2004 transferring the proceedings to the MPSC. (*Id.* ¶ 70.)  The transfer itself has been the source of an ongoing appeal by Plaintiffs now before the Michigan Court of Appeals. (*Id.* at 13 n.2.)  For its part, the MPSC said that the dispute was properly transferred to it since it had an obligation under state law (Mich. Comp. Laws §§ 460.6j *et seq.*) to review the reasonableness and prudence of Consumers Energy Company's fuel/power purchasing to meet customer needs and to review the calculation of avoided costs under PURPA. (MPSC Op. & Order, Feb. 28, 2005, 14.)  The same order upheld the status quo calculations. (*Id.* 14-15.)

---

[2]This issue is related to the first dispute, but premised on the calculation of "energy charges"–*i.e.,* the claim is that the charges collected by Consumers Energy Company were based on an old 1997 formula whereas the energy rates paid Plaintiffs were calculated based upon the new fuel mix. (*See* MPSC Op. & Order, Feb. 28, 2005, 12-14.)

After the MPSC showed Plaintiffs the door, they filed a petition with the Federal Energy Regulatory Commission ("FERC") on March 30, 2005, claiming violation of federal law. (First Am. Compl. ¶ 75.) FERC must have had something better to do because it issued its Notice of Intent Not to Act on June 1, 2005. (*Id.* Attach. 1.) Said Notice formally determined that FERC would not initiate an enforcement action under PURPA, but permitted Plaintiffs to bring their own PURPA action pursuant to 16 U.S.C. § 824a-3(h)(2). (*Id.* ¶ 77 & Attach. 1.)

This action was filed on March 30, 2005, *i.e.,* even before the FERC Notice. However, the First Amended Complaint was filed on June 2, 2005, after the FERC Notice. The First Amended Complaint is stated in three Counts: Count I for a declaratory judgment that the MPSC's February 28, 2005 Opinion and Order violates PURPA and PURPA regulations, (*id.* at 14-16); Count II for a declaratory judgment that said Opinion and Order violates the Federal Power Act, 16 U.S.C. § 791a *et seq.* ("FPA"), (*id.* at 16-17); and Count III for a declaration that the MPSC Order is preempted by federal law, including PURPA, FPA and federal regulations, (*id.* at 17-18).

Since each of the counts involve a request for a declaratory judgment, upon receipt of the briefing, the Court also ordered and received supplemental briefing regarding whether this Court's exercise of declaratory act jurisdiction[3] under 28 U.S.C. § 2201 would be consistent with the

---

[3]It is clear upon inspection of the First Amended Complaint that this is a declaratory judgment suit as to every count. Every count is labeled as such and seeks as its relief a declaration of various types. Every count likewise involves the legal propriety of MPSC's regulatory actions and does not involve a direct monetary claim against Consumers for either breach of contract or another theory of direct recovery, or for that matter the MPSC and its Commissioners (who are likely immune from damages for regulatory actions). Indeed, Consumers became part of this suit because it intervened, not because it was originally sued by Plaintiffs. While Count I arguably states a claim for injunctive relief against the MPSC, it does not bring such a claim against the individual commissioners. (*See* First Am. Compl., ¶¶ 15-16, wherefore clause B.) This failure to plead a prospective claim against individual officers is highly significant since the Eleventh Amendment exception under *Ex Parte Young*, 209 U.S. 123

standards set forth in *Wilton v. Seven Falls Co.,* 515 U.S. 277, 282 (1995), *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494-96 (1942), and *AmSouth Bank v. Dale*, 386 F.3d 763, 784-85 (6th Cir. 2004).

## DISMISSAL STANDARDS

Most of the dismissal arguments made in the pending motions allege a lack of subject matter jurisdiction or the related topic of abstention.  Lack of subject matter jurisdiction is an affirmative defense which may be asserted by motion.  *GTE North, Inc. v. Strand*, 209 F.3d 909, 915 (6th Cir. 2000).  Plaintiffs have the burden of establishing this Court's subject matter jurisdiction.  *Id.* (citing *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir.1990)).  Plaintiffs must show that the First Amended Complaint "alleges a claim under federal law, and that the claim is 'substantial.' " *Id.* (citing and quoting *Musson Theatrical, Inc. v. Fed. Express Corp.,* 89 F.3d 1244, 1248 (6th Cir. 1996)).  The allegations are construed "in a light most favorable to the plaintiff,

---

(1908), applies only to prospective claims against individual state officers.  *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55-56 (1996) (discussing injunctive exception under *Ex Parte Young*, 209 U.S. 123 (1908) as only possibly applicable to a claim against an individual state officer, such as a governor); *compare Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 610, 616 (6th Cir. 2003) (permitting prospective relief against individual state officers only).  In other words, the only even arguable claim in the First Amended Complaint for relief other than declaratory relief is one which is not permitted by the Eleventh Amendment.   Even an amendment to the First Amended Complaint to assert injunctive relief against individual officers would be futile because a claim for injunctive relief premised on mere monetary loss cannot show the "irreparable harm" necessary for equitable relief.  *See Manakee Prof'l Med. Transfer Serv., Inc. v. Shalala*, 71 F.3d 574, 581 (6th Cir. 1995) (holding that "monetary damages do not generally constitute irreparable harm"and citing *Sampson v. Murray,* 415 U.S. 61, 90-91 (1974) and *V.N.A. of Greater Tift County, Inc. v. Heckler,* 711 F.2d 1020, 1034 (11th Cir. 1983)); *see also Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 330-331 (1999) (discussing the district courts' lack of authority to issue injunctions regarding a monetary loss which has not been previously adjudicated in a legal action).  Additionally, Plaintiffs have failed to follow proper procedures for amendment of their complaint - - *i.e.*, the filing of a separate motion with the proposed amendments.

accept[ing] as true all of plaintiff's well-pleaded factual allegations . . . ." *Id.* (citing and quoting *Ludwig v. Bd. of Trustees of Ferris State Univ.,* 123 F.3d 404, 408 (6th Cir. 1997)).

However, the jurisdictional argument raised also relates to not only if the Court has subject matter jurisdiction over the controversy, but whether it should exercise discretionary jurisdiction pursuant to the terms of the Declaratory Judgment Act, 28 U.S.C. § 2201(a). *See Scottsdale Ins. Co. v. Roumph,* 211 F.3d 964, 967 (6th Cir. 2000); *AmSouth Bank*, 386 F.3d at 784-85. The exercise of such jurisdiction is discretionary and turns on "whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton,* 515 U.S. at 282.

In assessing the propriety of exercising discretionary jurisdiction "'in a particular case . . . depend[s] upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power.' " *Id.* (quotation omitted). This is especially so if, as in *Wilton,* there are pending state-court proceedings involving the same or similar legal disputes such that the federal action might gratuitously interfere with the state court action. *See id.* at 283.

## LEGAL ANALYSIS

To analyze the propriety of the exercise of jurisdiction over this suit, this Court will use the same five-factor test employed by the Sixth Circuit Court of Appeals in *AmSouth*. These factors are:

(1) whether the judgment would settle the controversy;

(2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;

6

(3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata';

(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and

(5) whether there is an alternative remedy that is better or more effective.

*AmSouth*, 386 F.3d at 785 (citing *Scottsdale Ins. Co.,* 211 F.3d at 968).

As to the first factor, the resolution of the federal legal questions posed in this suit would not solve the controversy. The MPSC and the Michigan Court of Appeals would still be required to resolve the pending state suit, which involves legal issues vitally related to both energy supply and energy rates. As such, this factor disfavors the exercise of jurisdiction.[4]

As to the second factor, on the face of it, a declaration of federal law might enlighten the MPSC about federal law and, thereby, clarify the relations between the parties. While this is a possibility, the Court believes that it is a remote one. The MPSC, if anything, is more aware of federal legislation affecting energy supply than this Court and duly considers federal law in making its state regulatory decisions. The MPSC is also under a state statutory obligation, Mich. Comp. Laws § 460.6j(6), to rule on the reasonableness and propriety of the energy purchased by Consumers (including the rates of those purchases), as part of "Power Supply Cost Recovery" review. To

---

[4]Plaintiffs' legal analysis has relied on the decision in *United States v. Kentucky*, 252 F.3d 816 (6th Cir. 2001), which is clearly distinguishable. In that case, federal review was mandated because the federal law completely preempted state law. Such is not the case here since the MPSC routinely enforces PURPA and FPA, which acts are consistent with state law regulatory requirements and a state law approach to regulation. The case of *Intellapex, PLLC v. Intel Corp.*, 2005 WL 2077371 (W.D. Mich. 2005), is also distinguishable because it did not present an instance of federal/state friction by the federal adjudication of federal trademark claims, which claims are routinely adjudicated by federal courts.

7

involve this Court before a final MPSC determination is made would only serve to derail a natural and proper state venue, which might moot any federal issue.  *See AmSouth*, 386 F.3d at 787.

"Procedural fencing" is the pejorative term given to the practice of filing a federal law suit asserting a federal defense as a means of eluding a state forum.  *See AmSouth*, 386 F.3d at 788.  In the instant case, for example, Count I of the First Amended Complaint was also asserted as a defense before the Michigan Court of Appeals.  While Plaintiffs do not regard that title as apt since they characterize the state suit as limited to state issues, the Court does believe that the term applies because the MPSC, in conducting its own review, must inherently consider the propriety of its orders under federal law, including PURPA.  In light of such, this suit appears to be an illicit attempt to get federal review of issues which are in the process of review before the state courts.  Thus, this factor disfavors the exercise of jurisdiction.

Under state law, electric rate and supply determinations (including determinations about Power Supply Cost Recovery review) are made solely by the MPSC, under Mich. Comp. Laws § 460.6j(6), and are reviewed on appeal by the Michigan Court of Appeals, under Mich. Comp. Laws § 462.26.[5]  Federal law does not contemplate federal review of such determinations, except in aberrant cases where federal law has been ignored or violated.  Comity for state government requires respect for the MPSC, its assigned powers and its administrative expertise.  The exercise of jurisdiction over this suit is likely to be disruptive of the balance between federal and state institutions, especially since it is typically the MPSC which exercises authority over these very issues.  The interests of comity are also especially strong whereas the state's own system of review

---

[5]The burden of proof at the Michigan Court of Appeals is a difficult one under Mich. Comp. Laws § 462.26(8), *see In re MCI Telecomm. Compl.*, 596 N.W.2d 164, 181 (Mich. 1999), which explains why some litigants might seek a forum elsewhere.

expresses confidence in the administrative expertise of the MPSC. *See Bldg. Owners & Managers Ass'n of Metro. Detroit v. Pub. Serv. Comm'n,* 346 N.W.2d 581, 587 (Mich. Ct. App. 1984); *Attorney Gen. v. Mich. Pub. Serv. Comm'n,* 602 N.W.2d 225, 229-30 (Mich. Ct. App. 1999). Therefore, this factor strongly disfavors the exercise of jurisdiction.

Alternative remedies disfavor the exercise of declaratory relief to the extent they are effective. In the instant case, a suit against the MPSC would seem the natural and more effective remedy since it would offer broader statutory and equitable remedy and review (*i.e.,* it would consider not only the propriety of the rates under PURPA, but also under state statutes governing the administrative review of such rates). Such a suit could include the consideration of Plaintiffs' federal defenses/claims under PURPA, since such statute does not prevent the state courts from enforcing PURPA obligations. *See generally Smith v. Dep't of Public Health,* 410 N.W.2d 749, 800 (Mich. 1987) (stating that Michigan courts "are duty-bound to enforce the provisions of the United States Constitution as well as valid federal laws" and routinely do so); *see also, e.g., Midland Cogeneration Venture Ltd. P'ship v. Mich. Public Serv. Comm'n*, 1999 WL 33444299, *2 (Mich. Ct. App. May 21, 1999) (determining alleged PURPA violation). Accordingly, all five factors favor the dismissal of this action.

**<u>STAY REQUEST</u>**

Plaintiffs have argued in their final supplemental brief (Dkt. No. 58 at 5 n.7) that the Court consider a stay of this suit as an alternative to dismissal. The Court has duly considered this possibility, especially since it was mentioned favorably in *Wilton*, 515 U.S. at 288 n.2, but does not find such desirable in light of the administrative burden of monitoring and the advisability that any future suit be premised on wholly new papers. Furthermore, the suggestion made in *Wilton* was

made as to cases in which a pressing time bar (statute of limitations) made a stay advisable.  In the present case, the parties have not even briefed the applicable statute of limitations and there is no reason to believe that the limitations periods would be pressing, or that some other tolling doctrine might otherwise make the limitations periods irrelevant.  Also, the Court simply has no reason to believe that a forthcoming state court decision will resolve the controversy inconsistent with federal law.  Equity and the fair use of judicial resources does not favor such a stay.

## **CONCLUSION**

A Judgment shall issue dismissing this suit without prejudice because the Court declines the exercise of declaratory jurisdiction.

 /s/ Richard Alan Enslen
DATED in Kalamazoo, MI:              RICHARD ALAN ENSLEN
    October 12, 2005                      SENIOR UNITED STATES DISTRICT JUDGE