RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 07a0080p.06



# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

ADRIAN ENERGY ASSOCIATES, et al.,
    *Plaintiffs-Appellants,*

v.

MICHIGAN PUBLIC SERVICE COMMISSION, et al.,
    *Defendants-Appellees,*

CONSUMERS ENERGY COMPANY,
    *Intervenor-Defendant.*

No. 06-1015

Appeal from the United States District Court
for the Western District of Michigan at Lansing.
No. 05-00060—Richard A. Enslen, District Judge.

Argued: September 22, 2006

Decided and Filed: February 26, 2007

Before: MERRITT, SUTTON, and GRIFFIN, Circuit Judges.

---

## COUNSEL

**ARGUED:** Thomas J. Waters, FRASER, TREBILCOCK, DAVIS & DUNLAP, Lansing, Michigan, for Appellants. Michael A. Nickerson, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellee. Michael G. Wilson, CONSUMERS POWER COMPANY, Jackson, Michigan, for Intervenor. **ON BRIEF:** Thomas J. Waters, Graham K. Crabtree, Thaddeus E. Morgan, David E.S. Marvin, FRASER, TREBILCOCK, DAVIS & DUNLAP, Lansing, Michigan, for Appellants. Michael A. Nickerson, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellee. Michael G. Wilson, CONSUMERS POWER COMPANY, Jackson, Michigan, for Intervenor.

# OPINION

MERRITT, Circuit Judge. This case arose from a contractual dispute between plaintiffs, who are eight small power-producing companies,[1] and the intervenor, Consumers Energy, a Michigan utility. Consumers Energy purchases power from plaintiffs pursuant to negotiated agreements, the terms, conditions and interpretation of which is governed by a complex state and federal regulatory scheme. Plaintiffs contend that Consumers Energy is not paying them contractually-agreed upon amounts, and they have sought relief in several different forums over the past several years, including state and federal courts, as well as state and federal regulatory agencies, all arising from the same dispute. Despite the convoluted procedural history raising many issues, the only issue to be decided in this appeal is whether the district court properly declined to exercise its discretionary jurisdiction under the Declaratory Judgment Act.

Plaintiffs sought declaratory and injunctive relief in the court below from an order of the Michigan Public Service Commission concerning the power purchase agreements. The suit named the Michigan Public Service Commission and the individual commissioners in their official capacities as defendants, and Consumers Energy intervened. Relying on the Declaratory Judgment Act, the district court declined to exercise jurisdiction over the matter and dismissed the complaint without prejudice, noting particularly the pending appeal in the Michigan Court of Appeals.[2] Plaintiffs brought that action in the Michigan state courts after the Michigan Public Service Commission upheld Consumer Energy's interpretation of the Power Purchase Agreements between plaintiffs and Consumer Energy.

Plaintiffs argue on appeal that the complaint was not one solely for declaratory judgment and the district court erred in treating it as such. They also contend that the district court erred in declining jurisdiction because the complaint raises preemption issues under the Supremacy Clause, as well as claims of violations of federal statutes, thereby bringing it within the court's subject matter jurisdiction.

We affirm the district court's judgment declining jurisdiction, but do so based on the alternate ground of abstention. In addition, we remand the case for the district court to enter a stay until the conclusion of the state proceedings rather than dismiss the case. Plaintiffs' pending state court action, along with the stay of the federal action, gives plaintiffs an adequate judicial forum to air their grievances, including any federal claims.

## I.

Plaintiffs are eight small power producers that sell power to Consumers Energy Company, a Michigan utility, and an intervenor in this case. The sale of power from these small producers is governed by a complex set of federal and state regulations, as well as the Power Purchase Agreement each plaintiff has with Consumers Energy. Plaintiffs are nonutility power producers known as

---

[1] Adrian Energy Associates, LLC; Cadillac Renewable Energy, LLC; Genesee Power Station, LP; Grayling Generating Station, LP; Hillman Power Company, LLC; T.E.S. Filer City Station, LP; Viking Energy of Lincoln, Inc. and Viking Energy of McBain, Inc.

[2] *Adrian Energy Assocs., LLC, et al. v. Mich. Pub. Serv. Comm'n*, No. 261718 (Mich. Ct. App. appeal filed Mar. 30, 2005).

"qualifying small power production facilities" and "qualifying cogeneration facilities" (collectively often referred to as "QFs"). *See* 16 U.S.C. §§ 796(17)(C), (18)(B). Qualifying facilities are a class of facilities, defined by their size, fuel use, efficiency, and ownership, *see FERC v. Mississippi*, 456 U.S. 742, 750 & n.11 (1982), entitled to special treatment under federal and state laws regulating power producers. *See* 16 U.S.C. § 824a-3(e)(1); 18 C.F.R. § 292.602(c)(1). They generate electricity using alternative fuel sources and sell their output to utilities – in this case to Consumers Energy. Congress enacted the Public Utility Regulatory Policies Act of 1978 (often referred to as "PURPA") to overcome traditional electric utilities' reluctance to purchase power from nontraditional electric generation facilities and to reduce the financial burden from state and federal regulation on nontraditional facilities. Federal Power Act, § 30 *et seq.*, as amended, 16 U.S.C. § 823a *et seq.* The utility must purchase the qualifying facility's power for its full "avoided cost" – the amount it would have cost the utility to generate, or to construct facilities to generate, the same power itself or to purchase the power from a facility using non-alternative fuel sources. The Federal Energy Regulatory Commission (sometimes referred to as "FERC") promulgates regulations affecting qualifying facilities.

State public utility commissions are responsible for implementing the Federal Energy Regulatory Commission's rules and for setting the rates. *Id.* § 824a-3(f). Under the Public Utility Regulatory Policies Act, the states play the primary role in calculating avoided costs and in overseeing the contractual relationship between qualifying facilities and utilities operating under the regulations promulgated by the Federal Energy Regulatory Commission. *See Indepen. Energy Producers Ass'n, Inc. v. Cal. Pub. Util. Comm'n*, 36 F.3d 848, 856 (9th Cir. 1994) (stating that the Federal Energy Regulatory Commission "afford[ed] the states . . . a great deal of flexibility both in the manner in which avoided costs are estimated and in the nature of the contractual relationship between utility and QF." (citing *Administrative Determination*, IV Federal Energy Reg. Comm'n Rep. (CCH) ¶ 32,457 at 32,173)).

## II.

The procedural history of this case is lengthy. The controversy began when plaintiffs claimed that Consumers Energy was not properly interpreting certain aspects of the Power Purchase Agreements, resulting in underpayment to plaintiffs. During the term of the Power Purchase Agreements with plaintiffs, Consumer Energy updated its generating plants to burn a cheaper kind of coal, and then reduced the price it paid plaintiffs under the avoided cost formula in the Power Purchase Agreements. Plaintiffs challenged Consumers Energy's reduction of the price paid, alleging that the method of calculating the avoided cost was fixed under the Power Purchase Agreements because Consumers Energy was required to use the cost of the original type of coal used in its avoided cost formula – in other words, the type of coal used when the agreements were signed was a fixed reference in the avoided cost formula and could not be changed even if the type of coal used by Consumers Energy changed.

In October 2003, Consumers Energy asked the Michigan Public Service Commission to determine whether Consumers Energy was properly construing the contracts and paying plaintiffs the correct amount under the contracts. Before the Michigan Public Service Commission ruled on Consumer Energy's application, plaintiffs filed suit against Consumers Energy in Ingham County Court in Michigan on October 14, 2003, seeking declaratory judgment and alleging breach of contract, promissory estoppel, constructive trust and unjust enrichment. Plaintiffs seek to recover over $12 million from Consumers Energy for alleged underpayment under the terms of the Power Purchase Agreements. Consumers Energy filed a motion claiming that the entire dispute was within the primary jurisdiction of the Michigan Public Service Commission. The Ingham County Circuit Court agreed and entered an order on February 12, 2004, dismissing the case and deferring to the

primary jurisdiction of the Michigan Public Service Commission. Plaintiffs appealed the transfer ruling to the Michigan Court of Appeals, which upheld the transfer. *Adrian Energy Assocs. v. Consumers Energy Co.*, No. 255319 (Mich. Ct. App. Nov. 3, 2005) (J.A. at 332).

The proceeding before the Michigan Public Service Commission included full discovery and a multi-day hearing with 11 witnesses. On February 28, 2005, the Michigan Public Service Commission determined that Consumers Energy was not required under the Power Purchase Agreements or any other orders or regulations to base its avoided cost on the price of the coal burned when the agreements were signed and that avoided costs may be calculated on Consumers Energy's actual ongoing coal costs. *In re Consumers Energy Co.*, No. U-13917 (Mich. Pub. Serv. Comm'n Feb. 28, 2005) (J.A. at 2149).

Based on the Michigan Public Service Commission's ruling, plaintiffs simultaneously filed an appeal with the Michigan Court of Appeals, an appeal to the Federal Energy Regulatory Commission and a complaint in the district court for the Western District of Michigan (which is the subject of this appeal) for declaratory and injunctive relief on March 30, 2005. The federal complaint sought a ruling from the district court that the Michigan Public Service Commission's February 28, 2005, order violates federal law because it relied on state law when only federal statutes – the Public Utility Regulatory Policies Act and the Federal Power Act -- are applicable to resolve the dispute between plaintiffs and Consumers Energy. The suit names as defendants the Michigan Public Service Commission and the individual commissioners in their official capacities.

Plaintiffs' First Amended Complaint requests relief from enforcement of the order on three grounds: (I) the February 28 Order violates the Public Utility Regulatory Policies Act; (II) the February 28 Order violates the Federal Power Act and (III) the February 28 Order violates the Supremacy Clause of the United States Constitution because the state law relied on by the Michigan Public Service Commission in the Order is preempted by federal law. Plaintiffs assert jurisdiction under 28 U.S.C. § 1331 and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*. Specifically, the first count in the First Amended Complaint requests declaratory relief in the form of a judgment enjoining the Michigan Public Service Commission from enforcing its February 28, 2005, Order because it is preempted by federal law and the count also requests an injunction prohibiting the Michigan Public Service Commission from failing to follow the Public Utility Regulatory Policies Act and requiring Consumers Energy to pay plaintiffs amounts of money wrongly withheld under the Power Purchase Agreements. The second count requests a declaratory judgment that the Michigan Public Service Commission's order is in conflict with the Federal Power Act, is preempted by federal law and that the Michigan Public Service Commission should be enjoined from enforcing its order. The third count seeks a declaratory judgment that the Michigan Public Service Commission's orders are preempted by federal law pursuant to the Supremacy Clause and the Michigan Public Service Commission should be enjoined from enforcing its orders. Consumers Energy was granted intervenor status due to its possible liability to plaintiffs for over $12 million should plaintiffs' interpretation of the energy rate calculation under the Power Purchase Agreements be adopted.

As noted above, in addition to filing a complaint in the federal court in Michigan, plaintiffs also appealed the Order to the Michigan Court of Appeals and that appeal has been fully briefed and remains pending. *See Adrian Energy Assocs. v. Mich. Pub. Serv. Comm'n*, No. 261718 (Mich. Ct. App.). In May 2005, plaintiffs moved the Michigan Court of Appeals to hold the appeal in abeyance pending the outcomes of the federal case and the appeal to the Federal Energy Regulatory Commission. In the alternative, plaintiffs requested to file a brief only on "state law" issues and to

reserve the federal issues. The motion was summarily denied.[3] Plaintiffs then filed a Motion to Withdraw Appeal with the Michigan Court of Appeals that was denied on January 11, 2006. Plaintiffs filed an Application for Leave to Appeal with the Michigan Supreme Court challenging the Court of Appeals' refusal to let them withdraw their appeal, but the Supreme Court denied that Application on February 27, 2006. *Adrian Energy Assocs. v. Mich. Pub. Serv. Comm'n*, No. 130314 (Mich. S. Ct. Feb. 27, 2006).

Pursuant to plaintiffs' appeal, on June 1, 2005, the Federal Energy Regulatory Commission issued a "Notice of Intent Not to Act," thereby declining to initiate an enforcement action against the Michigan Public Service Commission.[4] However, the Federal Energy Regulatory Commission clarified that its decision not to act did not "constitute a ruling on the merits of any issue raised" nor did it prohibit plaintiffs from bringing a private action against the Michigan Public Service Commission "in the appropriate court."

The court below entered a judgment of dismissal without prejudice, which is the basis of this appeal. The court found that it had jurisdiction under 28 U.S.C. § 1331, but, due to the posture of the complaint as one for declaratory relief, it would not exercise its discretionary jurisdiction under the Declaratory Judgment Act. 28 U.S.C. § 2201(a). The opinion is very narrow, reaching only the jurisdictional issue and making no findings about the merits of the case.[5] *Adrian Energy Assocs. v. Mich. Pub. Serv. Comm'n*, No. 5:05-CV-60, 2005 WL 2571881 (W.D. Mich. Oct. 12, 2005). The plaintiffs filed a motion for reconsideration requesting that the district court grant a stay in lieu of dismissing the case or that they be allowed to file a second amended complaint. The district court denied the motion. (J.A. at 340)

## III.

Plaintiffs raise several issues on appeal, most of which were not discussed or ruled upon by the district court. Plaintiffs devote much of their opening brief in our Court to discussions about the merits of the case – primarily attacking the substance of the Michigan Public Service Commission's February 28, 2005, Order – about which the district court said nothing. Because we generally do not reach issues not ruled upon by the district court, the only issue before us on appeal, therefore, is whether the district court erred in declining to exercise discretionary jurisdiction under the Declaratory Judgment Act. We decline to address whether the Michigan Public Service Commission

---

[3] After the Michigan Court of Appeals denied plaintiffs' motion to file briefs addressing only the state law issues, plaintiffs attempted again to reserve their federal claims from decision by the Michigan Court of Appeals by filing an *England* reservation pursuant to *England v. Louisiana State Bd. of Med. Examiners*, 375 U.S. 411, 419-22 (1964). The motion was denied. The Sixth Circuit has held that a party's *England* reservation in a state action may suffice to defeat claim preclusion in a subsequent federal action arising from the same facts. *DLX, Inc. v. Kentucky*, 381 F.3d 511 (6th Cir. 2004). No federal court has ruled on plaintiffs' attempt to reserve any federal issues solely to the federal courts and we have no opinion on that issue at this time.

[4] A utility or a qualifying facility may petition the Federal Energy Regulatory Commission to bring an action against a state public utility commission in federal district court to enforce the Federal Energy Regulatory Commission's rules. If the Federal Energy Regulatory Commission does not initiate an enforcement action itself, then the electric utility or qualifying facility may itself sue the state public utility commission in federal district court. *Id.* § 824a-3(h)(2). *Xcel Energy Servs. Inc. v. F.E.R.C.*, 407 F.3d 1242, 1243-44 (D.C. Cir. 2005); *Connecticut Valley Elec. Co. v. F.E.R.C.*, 208 F.3d 1037, 1043 (D.C. Cir. 2000).

[5] In their Motions to Dismiss, defendants raised other challenges to the jurisdiction of the district court, including sovereign immunity under the Eleventh Amendment, abstention under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), and the Johnson Act, 28 U.S.C. § 1342. The district court did not address these other challenges to its jurisdiction.

erred in concluding that Consumers Energy was paying the proper rate under the Power Purchase Agreements.[6]

The district court, although not discussing the merits of the case, agreed that it had subject-matter jurisdiction. As the Supreme Court noted in *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96 n.14 (1983):

> It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights. *See Ex parte Young,* 209 U.S. 123, 160-62 (1908). A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.

However, simply because a federal court may have subject matter jurisdiction does not mean that it must be exercised in every instance. In certain limited instances, "federal courts may decline to exercise their jurisdiction, in otherwise 'exceptional circumstances,' where denying a federal forum would clearly serve an important countervailing interest." *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716 (1996) (quoting *Colo. River Water Conserv. Dist. v. United States,* 424 U.S. 800, 813 (1976)). These "exceptional circumstances" may relate to a policy of accommodating federal-state relations.

We first briefly discuss the Declaratory Judgment Act, the law used by the district court to decline exercise of its jurisdiction. The granting of declaratory relief is entrusted to the discretion of the district court. 28 U.S.C. § 2201(a) says:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

(Emphasis added). This section of the Act gives district courts statutory discretion to decide whether to entertain actions for declaratory judgments. Section 2201 explicitly provides that "any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration." (Emphasis added).

This court reviews the district court's exercise of discretion under the Declaratory Judgment Act for abuse of discretion. *Scottsdale Ins. Co. v. Roumph,* 211 F.3d 964, 967 (6th Cir. 2000). "[D]istrict courts possess discretion in determining whether and when to entertain an action under

---

[6] We briefly address plaintiffs' claim that the Michigan Public Service Commission's February 28 Order conflicts with the Federal Power Act, the Public Utility Regulatory Policies Act and regulations of the Federal Energy Regulatory Commission, and is therefore void by virtue of the Supremacy Clause of the United States Constitution. We agree, of course, that the Supremacy Clause bars states from acting within a zone of *exclusive* federal jurisdiction. However, none of the issues raised by plaintiffs in their complaint concerning the February 28 Order fall within the mandatory jurisdiction of the Federal Energy Regulatory Commission or the federal courts. Plaintiffs do not contend in their complaint that the State of Michigan has improperly implemented the Acts in conflict with federal law; instead they challenge only the Michigan Public Service Commission's *interpretation* of the terms of the Power Purchase Agreements. Such challenges to a State's interpretation of a power purchase agreement are generally not preempted by federal law or regulations. *See generally New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 911 F.2d 993 (5th Cir. 1990). Moreover, the state courts are fully competent to, and often do, address and correctly apply relevant federal law or regulations to the cases in their courts.

the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).

In *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942), the Court warned district courts against "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation" and directed them to exercise discretion in deciding whether or not to proceed. The Supreme Court, however, did not articulate all of the considerations which should guide a district court's decision in this regard; it did provide, however, that the court should "ascertain whether the questions in controversy between the parties to the federal suit[ ] . . . can better be settled in the proceeding pending in the state court[ ]", assess "the scope of the pending state proceeding and the nature of the defenses open there[ ]", and evaluate "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process in that proceeding, etc." *Id.*

In determining the propriety of entertaining a declaratory judgment action, competing state and federal interests weigh in the balance, with courts particularly reluctant to entertain federal declaratory judgment actions premised on diversity jurisdiction in the face of a previously-filed state-court action. The concern centers on the fact that even if the plaintiffs acted in good faith, the ultimate outcome of their procedural behavior has been to wrest the case away from the state courts, a factor that should come into play in assessing the appropriateness of assuming jurisdiction over these claims.

This court has adopted a five-factor test to determine when a district court should exercise jurisdiction over a declaratory judgment:

(1) whether the judgment would settle the controversy;
(2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
(5) whether there is an alternative remedy that is better or more effective.

*Scottsdale Ins. Co.*, 211 F.3d at 968. Here, the district court applied each factor, finding each of them disfavored the court's exercise of its discretionary jurisdiction. D. Ct. Opinion at 7-9 (J.A. 256-58). To summarize the district court's application of the five factors:

First, resolution of any federal question would not resolve the controversy. The Michigan Court of Appeals would still be required to decide the pending appeal and the Michigan Public Service Commission must apply and enforce the ruling regardless of whether it rests on state or federal law. Second, the declaratory judgment action will not clarify the legal relations at issue. The Michigan Public Service Commission is likely more knowledgeable of federal law affecting energy rates than the federal court because it often considers federal law when making regulatory decisions. Third, the district court viewed the federal suit as "procedural fencing," labeling it an "illicit attempt" to get federal review of issues being reviewed by the state court. Fourth, electric rate and supply determinations are made solely by the Michigan Public Service Commission and reviewed on appeal by the Michigan Court of Appeals pursuant to statute. Mich. Comp. Laws § 462.26. The state, therefore, has set up a system of multi-tier review of energy rates making interests of comity particularly strong. The exercise of federal jurisdiction over this suit would likely be disruptive of the balance between federal and state bodies. Fifth, an alternative remedy already exists and is proceeding in the Michigan Court of Appeals. The state court is "duty bound to enforce the

provisions of the United States Constitution as well as valid federal laws" and routinely does so. *See, e.g., Smith v. Dep't of Public Health*, 428 Mich. 540, 410 N.W.2d 749, 800 (1987). The district court correctly found all five factors favor dismissal.

While we agree with the district court's analysis under the Declaratory Judgment Act, we do not believe that the discretion given to the district court under the Act by itself supplies a sufficient ground for dismissal. When a plaintiff seeks relief in addition to a declaratory judgment, such as damages or injunctive relief, both of which a court *must address,* then the entire benefit derived from exercising discretion not to grant declaratory relief is frustrated, and a stay or dismissal would not save any judicial resources. The claims in this case for which declaratory relief is requested and those for which injunctive relief is requested are so closely intertwined that judicial economy counsels against dismissing the claims for declaratory judgment relief while adjudicating the claims for injunctive relief. However, we agree with the district court's decision not to reach the merits of the case given the pending state action raising identical claims. While our result is the same, we believe, for many of the same reasons articulated by the district court to support dismissal under the Declaratory Judgment Act, that abstention provides the preferable ground on which to decline reaching the merits of the case at this time.

Abstention is not one doctrine but several, and the strand that most invites attention here derives from *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). The fundamental concern in *Burford* is to prevent federal courts from bypassing a state administrative scheme and resolving issues of state law and policy that are committed in the first instance to expert administrative resolution. *See New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361-64 (1989); *Bath Mem. Hosp. v. Maine Health Care Fin. Comm'n*, 853 F.2d 1007, 1014-15 (1st Cir. 1988).

*Burford* involved an action to enjoin enforcement of a Texas Railroad Commission order that granted an oil drilling permit. Even though the federal district court had subject matter jurisdiction on the basis of diversity and a federal claim of denial of due process, the Supreme Court held that the district court should abstain from hearing the case because the state had centralized the regulation of oil and gas matters with the Texas Railroad Commission and provided for adequate review in the state courts. The Supreme Court concluded that federal court review would lead to conflicts in the interpretation of state law, thereby frustrating policy.

The *Burford* doctrine provides that where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Public Serv., Inc. v. Council of New Orleans*, 491 U.S. at 361 (quoting *Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 814 (1976)).

First invoked in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), *Burford* abstention requires a federal court to abstain from jurisdiction where to assume jurisdiction would "be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colo. River Water Conserv. Dist.*, 424 U.S. at 814. But *Burford* "does not require abstention whenever there exists [a complex state administrative] process, or even in all cases where there is a potential for conflict with state regulatory law or policy." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. at 362 (quotation omitted). Instead, "[t]his balance only rarely favors abstention, and the power to dismiss recognized in *Burford* represents an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996) (quotation omitted). Because *Burford* abstention is

concerned with potential disruption of a state administrative scheme, rather than the mere existence of such a scheme, we must look behind the action to determine whether it implicates the concerns raised in *Burford*.

In *Coalition for Health Concern v. LWD, Inc.*, 60 F.3d 1188 (6th Cir. 1995), a panel of this Court found *Burford* abstention appropriate where both federal and state statutes were involved in the regulation of hazardous waste. The Court found that the state had an overriding interest in the protection of the environment from the effects of unregulated hazardous waste, and that exercise of federal review would be disruptive of Kentucky's efforts to establish a coherent policy with respect to the licensing of hazardous waste facilities. The reasons given by *Coalition for Health Concern* for applying *Burford* abstention apply with equal force here. As in that case, Michigan "has enacted and is operating its own authorized program" under the Public Utility Regulatory Policies Act and has established a coherent policy under its law concerning regulation of qualifying facilities. *Id.* at 1194-95. Michigan has enacted its own state laws and provided a scheme for administrative and judicial review.

Similarly here, the Public Utility Regulatory Policies Act involves the sale of electricity by qualifying facilities and the recovery of costs associated with that purchase by utilities and state law governs the acquisition and sale of electricity to consumers. Federal court intervention in this case would interfere with the Michigan Public Service Commission's efforts to ensure that utility customers are charged appropriate and accurate rates pursuant to the power purchase agreements entered into between qualifying facilities and the utilities, which were previously approved by the Michigan Public Service Commission. In addition, by statute, the state of Michigan has determined that rate orders of the Michigan Public Service Commission are to be appealed to the Michigan Court of Appeals, thereby providing for adequate judicial review of any Michigan Public Service Commission orders, including any federal issues raised. Mich. Comp. Laws Ann. § 462.26. Moreover, plaintiffs concede that their complaint contains claims under both federal and state law. The Michigan Public Service Commission maintains that the Michigan Court of Appeals is the proper court to review plaintiffs' claims, including the federal claims.

As in *Coalition for Health Concern,* federal review at this juncture would be disruptive of Michigan's efforts to establish a coherent policy with respect to regulation of qualifying facilities, particularly as the Michigan Public Service Commission and state courts have or are reviewing the precise issue raised by the plaintiffs under a legislatively-approved scheme.

## IV.

After the district court ruled that it would not exercise its discretionary jurisdiction and dismissed the complaint without prejudice, plaintiffs filed a motion for reconsideration of the decision not to stay and to alter, amend, set-aside or vacate judgment. Plaintiffs claim that they will run up against a statute of limitations problem on their federal claims if the complaint is dismissed instead of stayed. Plaintiffs also argue that the state court will not resolve their federal questions consistent with federal law and they are likely to be back in federal court. The district court denied the motion. J.A. at 340.

Rather than dismissing the complaint without prejudice, the district court should have stayed the plaintiffs' claims until the state court proceedings concluded. *Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir.1995). As we noted in *Brindley,* "[i]ssuing a stay avoids the costs of refiling, allows the plaintiffs to retain their place on the court docket, and avoids placing plaintiffs in a sometimes difficult position of refiling their case before the statute of limitations expires." *Id.* Although we have every reason to believe that the Michigan Court of Appeals will properly address any issues of federal law in the state court action, a stay will preserve the availability of a federal forum in the

event the state court fails to address the plaintiffs' federal claims. Preservation of a federal forum strikes the appropriate balance between countervailing considerations of the state's interests in operating its own courts free from federal interference and the federal interest in protecting federal rights. *See, e.g., Quackenbush*, 517 U.S. at 726-31 (Court applied *Burford* abstention to strike balance between "the strong federal interest in having certain classes of cases, and certain federal rights, adjudicated in federal court," and "the State's interests in maintaining uniformity in the treatment of an essentially local problem") (internal quotations omitted); *Deakins v. Monaghan*, 484 U.S. 193, 203 n.7 (recognizing that unless federal court retained jurisdiction during the pendency of the state proceeding, a plaintiff could be barred by the statute of limitations from claims "not cognizable in the parallel state proceeding").

Although staying the suit instead of dismissing it will often reflect an abundance of caution, leaving the district court with "nothing left to do but clear the case number off of its docket once the state proceedings conclude," it protects the plaintiff whose federal claims were not resolved on the merits in state court. *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1075-76 (6th Cir. 1998). If the state court rules on all aspects of plaintiffs' state court appeal, their federal claims will likely be precluded by the doctrine of res judicata because their pending state claims concerning the validity of the Michigan Public Service Commission order are essentially identical to the claims in the federal lawsuit.

Nonetheless, in the interests of caution, we are constrained to remand the case to the district court with instructions to stay rather than dismiss plaintiffs' complaint until the state proceedings conclude. American Law Institute, *Study of the Division of Jurisdiction Between State and Federal Courts* § 1371 Commentary, at 285 (1969) (recommending entry of a stay when the state-court action could prove "ineffective"). If the state court should dispose of their federal claims on grounds that do not reach the merits, plaintiffs' federal action would still be pending. They would not have to contend with a statute of limitations defense and various tolling arguments upon the filing of a new federal lawsuit. A stay will protect plaintiffs' claims from the statute of limitations defense. *See Deakins v. Monaghan*, 484 U.S. at 202-03 & n.7.

For the foregoing reasons, we affirm the district court's judgment declining jurisdiction on the alternative ground of abstention, but remand the case for the district court to enter a stay rather than dismiss the lawsuit until the conclusion of the state proceedings.